**No. 25-6842**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

RAMON RODRIGUEZ VAZQUEZ, on behalf of himself and all others similarly situated

*Plaintiff-Appellee*,

v.

LAURA HERMOSILLO, Seattle Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement (ICE), et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Washington
No. 3:25-cv-05240 (Cartwright, J.)

**APPELLANTS' OPENING BRIEF**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
General

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant
Attorney General

VICTOR M. MERCADO-SANTANA
Senior Litigation Counsel

IAN S. LAM
MICHAEL D. ROSS
Trial Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 506-0754

*Attorneys for Defendants-Appellants*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................ 1

STATEMENT OF JURISDICTION ................................................................. 3

STATEMENT OF THE ISSUES ..................................................................... 4

STATEMENT OF THE CASE ........................................................................ 4

    I.    Statutory Framework ......................................................................... 4

        A.  The Pre-IIRIRA framework gave preferential treatment to aliens who unlawfully entered and remained in the United States. ..................................................................... 4

        B.  IIRIRA eliminated the preferential treatment of aliens who unlawfully entered in the United States and mandated detention of "Applicants for Admission." .................................. 6

        C.  The Government applies 1255(b)(2)(A) to require detention of all applicants for admission. ...................................................13

    II.    Factual Background and Procedural History......................................15

        A.  Petitioner illegally entered the United States without admission and was detained for removal proceedings. ...........................15

        B.  The district court granted a preliminary injunction, certified a class, and granted partial summary judgment. ........................15

SUMMARY OF ARGUMENT ......................................................................16

STANDARD OF REVIEW ........................................................................... 18

ARGUMENT.................................................................................................19

    I.    Section 1225(b)(2) mandates detention of aliens who are present in the United States without having been admitted. ...........................19

i

A. The plain language of 1225(b)(2) mandates detention of applicants for admission. ........................................................20

B. The district court's decision disregards the clear text of 1225(b)(2)(A). ............................................................... 22

    1. The phrase "seeking admission" does not narrow the scope of 1225(B)(2)(A). ................................................ 22

C. Section 1126 does not support the district court's reading. ......31

D. The district court's narrow interpretation subverts Congressional intent. ............................................................37

E. The Supreme Court's decision in *Jennings* supports the Government's interpretation. ...................................................39

CONCLUSION.................................................................................41

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

*Aguilar v. ICE*,
510 F.3d 1 (1st Cir. 2007) ......................................................... 21

*Altamirano Ramos v. Lyons*,
—F. Supp. 3d—, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025) ........... 24, 25

*Alvarez v. ICE*,
818 F.3d 1194 (11th Cir. 1016) ................................................ 21

*Al Otro Lado v. Exec. Off. For Immigr. Rev.*,
138 F.4th 1102 (9th Cir. 2025) ................................................ 22

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ............................................................. 31

*Att'y Gen. of United States v. Wynn*,
104 F.4th 348 (D.C. Cir. 2024) ................................................ 26, 27

*Barton v. Barr*,
590 U.S. 222 (2020) ..........................................................2, passim

*Cabanas v. Bondi*,
4:25-cv-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025) ................. 25

*Calderon v. Ashmus*,
523 U.S. 740 (1998) ............................................................. 22, 23

*Candido v. Bondi*,
No. 25-cv-867, 2025 WL 3484932 (W.D.N.Y. Dec. 4, 2025) ................... 25

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) ..........................................................5, 9, 41, 42

*Fusco v. Grondolsky*,
No. 17-1062, 2019 WL 13112044 (1st Cir. June 18,2019) ................... 22, 23

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ............................................................. 31

iii

*Heyman v. Cooper*,
31 F.4th 1315 (11th Cir. 2022)....................................................... 33

*Hing Sum v. Holder*,
602 F.3d 1092 (9th Cir. 2010)..................................................... 5, 6, 7

*Hose v. I.N.S.*,
180 F.3d 992 (9th Cir. 1999) ............................................................ 5

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) ..................................................... 20, 21

*Jennings v. Rodriguez*,
583 U.S. 281 (2018)................................................................... passim

*Kaplan v. Tod*,
267 U.S. 228 (1925)....................................................................... 42

*King v. Burwell*,
576 U.S. 473 (2015) ................................................................... 40, 41

*Kleber v. CareFusion Corp.*,
914 F.3d 480 (7th Cir. 2019) ........................................................ 27

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020)....................................................................... 23

*LoBue v. Christopher*,
82 F.3d 1081 (D.C. Cir. 1996)........................................................ 23

*Maldonado v. Bostock*,
No. 2:23-cv-760, 2023 WL 5804021 (W.D. Wash. Aug. 8, 2023) ...........30

*Martinez v. Att'y General of U.S.*,
693 F.3d 408 (2012) ...................................................................... 6

*Mejia Olalde v. Noem*,
No. 1:25-cv-168, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025) ........ passim

iv

*Microsoft Corp. v. I4I Ltd. P'ship*,
  564 U.S. 91 (2011) ................................................................38

*Monk v. Sec. of Navy*,
  793 F.2d 364 (D.C. Cir. 1986) ............................................23

*Morales-Izquierdo v. Gonzales*,
  486 F.3d 484 (9th Cir. 2007) ................................................9

*Nat'l Pork Producers Council v. Ross*,
  598 U.S. 356 (2023) ............................................................44

*New York State Dep't of Soc. Servs. v. Dublino*,
  413 U.S. 405 (1973) ...................................................... 40, 41

*Nielsen v. Preap*,
  586 U.S. 392 (2019) ............................................................ 13

*Okonowsky v. Garland*,
  109 F.4th, 1166 (9th Cir. 2024) ..........................................20

*Ortega-Cervantes v. Gonzalez*,
  501 F.3d 1111 (9th Cir. 2007)............................................. 12

*Pereira v. Sessions*,
  585 U.S. 198 (2018)............................................................ 31

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
  566 U.S. 639 (2012) ...........................................................35

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  ("AADC"), 525 U.S. 471 (1999)............................................20

*Rimini St., Inc. v. Oracle USA, Inc.*,
  586 U.S. 334 (2019) ...........................................................32

*Rojas v. Olson*,
  No. 25-cv-1437, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025)...25, passim

v

*Sandoval v. Acuna,*
No. 6:25-cv-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025)............ 25

*Shaughnessy v. United States ex rel. Mezei,*
345 U.S. 206 (1953)....................................................................... 42, 43

*Sissoko v. Rocha,*
509 F.3d 947 (9th Cir. 2007) ................................................................ 21

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.,*
576 U.S. 519 (2015) ............................................................................ 26

*Topal v. Bondi,*
No. 1:25-cv-01612, 2025 WL 3486894 (W.D. La. Dec. 3, 2025).............. 25

*Torres v. Barr,*
976 F.3d 918 (9th Cir. 2020)............................................................ 7, 42

*United States v. Bronstein,*
849 F.3d 1101 (D.C. Cir. 2017) ....................................................... 32, 33

*Villarreal v. R.J. Reynolds Tobacco Co.,*
839 F.3d 958 (11th Cir. 2016)............................................................. 27

*Xiaoquan Chen v. Almodovar,*
No. 1:25-cv-8350, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025) .............. 25

*Yamataya v. Fisher,*
189 U.S. 86 (1903)..............................................................................43

## ADMINISTRATIVE DECISIONS

*Matter of Akhmedov,*
29 I. & N. Dec. 166 (BIA 2025).............................................................15

*Matter of Cabrera-Fernandez,*
28 I. & N. Dec. 747 (BIA 2023) ........................................................... 12

*Matter of Castillo-Padilla,*
25 I. & N. Dec. 257 (BIA 2010)............................................................ 12

*Matter of Lemus-Losa,*
  25 I & N. Dec. 734 (BIA 2012) ................................................................ 27

*Matter of Yajure Hurtado,*
  29 I. & N. Dec. 216 (BIA 2025) ...................................................... 5, passim

**STATUTES**

8 U.S.C. § 1101(a)(13) ............................................................................. 5

8 U.S.C. § 1101(a)(13)(A) .................................................................. 7, 24

8 U.S.C. § 1101(a)(13)(C) ...................................................................... 30

8 U.S.C. § 1127 ...................................................................................... 14

8 U.S.C. § 1182 ...................................................................................... 13

8 U.S.C. § 1182(a)(6)(A) ................................................................... 13, 37

8 U.S.C. § 1182(a)(6)(C) ........................................................................ 37

8 U.S.C. § 1182(a)(6)(C)(i) ................................................................ 37, 38

8 U.S.C. § 1182(a)(6)(D) ....................................................................... 30

8 U.S.C. § 1182(a)(7) ............................................................................. 37

8 U.S.C. § 1182(a)(9)(B)(i)(I)-(II) ......................................................... 28

8 U.S.C. § 1182(b)(5) ........................................................................ 14, 37

8 U.S.C. § 1182(d)(5) ............................................................................. 14

8 U.S.C. § 1182(d)(5)(A) ........................................................................ 11

8 U.S.C. § 1225 ........................................................................................ 1

8 U.S.C. § 1225(a)-(b) ............................................................................. 5

8 U.S.C. § 1225(a) ................................................................ 25

8 U.S.C. § 1225(a)(1) ................................................ 1, 8, 17, 24

8 U.S.C. § 1225(a)(2) ............................................................ 30

8 U.S.C. § 1225(a)(3) ....................................................... 18, 26

8 U.S.C. § 1225(a)(4) ............................................................ 34

8 U.S.C. § 1225(b) ........................................................ 14, 17, 21

8 U.S.C. § 1225(b)(1)-(2) ......................................................... 9

8 U.S.C. § 1225(b)(1) ....................................................... 16, 29

8 U.S.C. § 1225(b)(1)(A)(i)–(iii) ............................................... 9

8 U.S.C. § 1225(b)(1)(B)(ii) ................................................... 10

8 U.S.C. § 1225(b)(2) ............................................................ 22

8 U.S.C. § 1225(b)(2)(A) ................................................2, passim

8 U.S.C. § 1225(b)(2)(B) .................................................. 10, 36

8 U.S.C. § 1225(b)(2)(C) ....................................................... 36

8 U.S.C. § 1226 .................................................................... 11

8 U.S.C. § 1226(a) ........................................................5, passim

8 U.S.C. § 1226(c) ............................................................... 16

8 U.S.C. § 1226(c)(1) ........................................................... 13

8 U.S.C. § 1226(c)(1)(A) ................................................... 35, 36

8 U.S.C. § 1226(c)(1)(B) ................................................... 35, 36

8 U.S.C. § 1226(c)(1)(C) ........................................................ 35

8 U.S.C. § 1226(c)(1)(D) ................................................... 35, 36

8 U.S.C. § 1226(c)(1)(E) ................................................... 35, 36

8 U.S.C. § 1226(c)(E)(i) ......................................................... 37

8 U.S.C. § 1226(c)(E)(ii) ................................................... 37, 39

8 U.S.C. § 1226(c)(4) ............................................................ 37

8 U.S.C. § 1227 ............................................................... 13, 14

8 U.S.C. § 1227(a) ........................................................... 36, 44

8 U.S.C. § 1227(a)(1)(A) ........................................................ 36

8 U.S.C. § 1229a ................................................................... 9

8 U.S.C. § 1229a(c)(2)(A) ....................................................... 34

8 U.S.C. § 1229a(c)(4) .......................................................... 34

8 U.S.C. §1231 .................................................................. 16

8 U.S.C. § 1251 ................................................................... 5

8 U.S.C. § 1252 ............................................................... 4, 17

8 U.S.C. § 1252(b)(9) ........................................................... 20

8 U.S.C. § 1252(e)(1)(B) .................................................... 21, 22

8 U.S.C. § 1252(e)(3) ........................................................... 22

8 U.S.C. § 1252(e)(3)(A) ........................................................ 21

8 U.S.C. § 1252(f)(1) ........................................................... 22

8 U.S.C. § 1252(g) ............................................................................ 21

28 U.S.C. § 1291 ................................................................................. 4

28 U.S.C. § 2241(a) ......................................................................... 23

Pub. L. No. 104-208 ........................................................................... 7

Pub. L. No. 119-1 ............................................................................. 13

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 23(b)(2) ................................................................... 22

Fed. R. Civ. P. 54(b) .......................................................................... 3

## REGULATIONS

8 C.F.R. § 235.3(b)(1)(ii) ........................................................... 10, 30

8 C.F.R. § 235.3(b)(2)(iii) .............................................................. 10

8 C.F.R. § 235.3(b)(4)(ii) ............................................................. 9, 10

8 C.F.R. § 236.1(c)(8) ..................................................................... 12

8 C.F.R. § 236.1(d) ........................................................................ 12

8 C.F.R. § 236.1(d)(1) .................................................................... 12

8 C.F.R. § 1003.19 ......................................................................... 12

8 C.F.R. § 1236.1(d)(1) .................................................................. 12

62 Fed. Reg. 10312 ........................................................................ 31

x

**STATEMENT IN SUPPORT OF ORAL ARGUMENT AND
REGARDING CIRCUIT RULE 34-3**

Pursuant to Federal Rule of Appellate Procedure 34(a)(1), Defendants-Appellants submit that oral argument will assist the Court in resolving this appeal. This appeal addresses the interpretation of the Government's immigration detention authority under 8 U.S.C. § 1225(b)(2)—a recurring issue that has arisen in many dozens (if not hundreds) of cases filed within this Circuit over the last several months. Oral argument will aid the Court in evaluating the parties' arguments on the proper interpretation of § 1225(b)(2) and facilitate the Court's resolution of this important question of the Government's detention authority that will determine the outcome of the plethora of cases pending in this Circuit.

## INTRODUCTION

Before 1996, federal immigration laws required detention of aliens who presented at a port of entry but allowed those who had unlawfully entered and were already present in the United States to be released on bond pending deportation proceedings. Congress overhauled the immigration system in 1996 with the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), which sought to end preferential treatment of aliens who evade inspection and enter the United States unlawfully.

As relevant here, Congress enacted what is now codified at 8 U.S.C. § 1225. It "deem[s]" any "alien present in the United States who has not been admitted or who arrives in the United States" to be "an applicant for admission." 8 U.S.C. § 1225(a)(1). And it mandates detention of any "applicant for admission" who cannot show that they are "clearly and beyond a doubt entitled to be admitted." *Id.* § 1225(b)(2)(A). There is no exception for aliens who are not apprehended upon arrival. There is no exception for aliens who make it to the interior of the country. And there is no exception for aliens who have been present in the United States for years. Although the Government previously applied the statute differently, the Court must enforce the language of § 1225(b)(2)(A) as written.

1

The district court disregarded the unambiguous statutory text. There is no dispute that Plaintiff and class members are "applicants for admission" under § 1225(a). Plaintiff admittedly has been living "in the United States for years and has not sought admission," ER-126, and by definition, class members have "entered without inspection" and were "not apprehended upon arrival," ER-109. Nor has Plaintiff or class members shown that they are "clearly and beyond a doubt" entitled to be admitted. 8 U.S.C. § 1225(b)(2)(A). Yet despite the clear text of § 1225 requiring detention of such aliens, the district court held that Plaintiff and class members are entitled to a bond hearing and potential release. That was error.

The district court's statutory interpretation cannot be justified out of a need to avoid surplusage in § 1225(b)(2). There is no surplusage; the statutory text and context show that each term has independent meaning. But even if it were otherwise, "redundancies are common in statutory drafting" and are "not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton v. Barr*, 590 U.S. 222, 239 (2020). Besides, that canon has no relevance where, as here, there would be redundancy under *any* interpretation.

The district court's atextual reading also is not necessary to give effect to the separate detention authority in § 1226. On its face, § 1226 applies to

numerous aliens *not* subject to § 1225(b)(2)(A), including all *admitted* aliens who are now removable—such as the more than one million aliens in the United States who were lawfully admitted but overstayed their visas. For those aliens, § 1226 alone applies. The mere fact that § 1226(c) may overlap in part with § 1225(b)(2)(A) is insufficient to rewrite clear statutory text.

Ultimately, the district court's interpretation is not only contrary to the statute's text but is antithetical to congressional intent. It would return the same unfair framework that IIRIRA was meant to eliminate—detaining aliens who present at a port of entry, while authorizing release of those aliens who evade inspection and enter the United States illegally. The Court should not endorse such a backwards outcome, particularly one that is so plainly subversive of congressional intent.

## STATEMENT OF JURISDICTION

The district court granted Plaintiff's motion for partial summary judgment on September 30, 2025. *See* ER-3–4. Although there were other claims of relief raised in this action, the district court expressly determined there was no just reason for delay in entering partial final judgment. *See* ER-61; *see also* Fed. R. Civ. P. 54(b). Defendants-Appellants timely filed a notice of appeal on October 28, 2025. *See* ER-167–68. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Whether 8 U.S.C. § 1225(b)(2)(A) applies to all aliens who are present in the United States without admission pending their removal proceedings and requires that they be detained pending removal proceedings, regardless of how long they have been present in the United States or how far into the country they are apprehended.

## STATEMENT OF THE CASE

### I.     Statutory Framework

#### A.     The Pre-IIRIRA framework gave preferential treatment to aliens who unlawfully entered and remained in the United States.

The Immigration and Nationality Act ("INA"), as amended, contains a comprehensive framework governing the regulation of aliens, including the creation of removal proceedings for aliens who unlawfully enter the United States or are otherwise removable from the country. It also creates requirements for when the Executive must detain aliens pending removal.

Prior to 1996, the INA treated aliens differently based on whether they had presented at a port of entry or evaded inspection and entered the United States illegally. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222-24 (BIA 2025) (citing 8 U.S.C. §§ 1225(a), 1251 (1994)); *see Hing Sum v. Holder*, 602 F.3d 1092, 1099-1100 (9th Cir. 2010) (same). "Entry" referred to "any coming of an alien into the United States." 8 U.S.C. § 1101(a)(13) (1994).

4

And whether an alien had physically entered the United States (or not) "dictated what type of [immigration] proceeding applied," *Hing Sum*, 602 F.3d at 1099, and whether the alien would be detained pending those proceedings, *Hurtado*, 29 I. & N. Dec. at 222-23.[1]

At the time, the INA "provided for two types of removal proceedings: deportation hearings and exclusion hearings." *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) (en banc). An alien who arrived at a port of entry would be placed in "exclusion proceedings and subject to mandatory detention, with potential release solely by means of a grant of parole." *Hurtado*, 29 I. & N. Dec. at 223; *see* 8 U.S.C. §§ 1225(a)-(b) (1995), 1226(a) (1995). In contrast, an alien who evaded inspection and physically entered the United States unlawfully would be placed in deportation proceedings. *Hurtado*, 29 I. & N. Dec. at 223; *Hing Sum*, 602 F.3d at 1100. Aliens in deportation proceedings, unlike those in exclusion proceedings, "were entitled to request release on bond." *Hurtado*, 29 I. & N. Dec. at 223 (citing 8 U.S.C. § 1252(a)(1) (1994)).

---

[1] Aliens who arrive at a port of entry have physically "entered" the United States, but under the longstanding "entry fiction" doctrine, "aliens who arrive at ports of entry … are 'treated' for due process purposes as if stopped at the border." *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020).

Thus, the INA's prior framework distinguishing between aliens based on "entry" had

> the 'unintended and undesirable consequence' of having created a statutory scheme where aliens who entered without inspection 'could take advantage of the greater procedural and substantive rights afforded in deportation proceedings,' *including the right to request release on bond*, while aliens who had 'actually presented themselves to authorities for inspection' ... were subject to mandatory custody.

*Hurtado*, 29 I. & N. Dec. at 223 (emphasis added) (quoting *Martinez v. Att'y General of U.S.*, 693 F.3d 408, 413 n.5 (2012)); *see Hing Sum*, 602 F.3d at 1100 (similar); H.R. Rep. No. 104-469, pt. 1, at 225 (1996) ("House Rep.") ("illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection").

**B. IIRIRA eliminated the preferential treatment of aliens who unlawfully entered in the United States and mandated detention of "Applicants for Admission."**

Congress took corrective action by enacting IIRIRA, Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996). Among other things, IIRIRA "ensures that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc).

To that end, IIRIRA replaced the prior focus on physical "entry" and instead made lawful "admission" the touchstone. IIRIRA defined "admission" as "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). In other words, immigration laws no longer distinguish aliens based on whether they manage to evade detection and enter the country without permission. Instead, the "pivotal factor in determining an alien's status" is "whether or not the alien has been *lawfully* admitted." House Rep., *supra*, at 225 (emphasis added); *see Hing Sum*, 602 F.3d at 1100 (similar). IIRIRA also eliminated the exclusion/deportation dichotomy and consolidated both sets of proceedings into "removal proceedings." *Hurtado*, 29 I. & N. Dec. at 223.

IIRIRA effected these changes through several provisions codified in § 1225 of Title 8.

**Section 1225(a):** Section 1225(a) codifies Congress's decision to make lawful "admission," rather than physical entry, the touchstone. That provision states that an alien "present in the United States who has not been admitted or who arrives in the United States" "shall be deemed ... an applicant for admission":

> An alien present in the United States who has not been admitted
> or who arrives in the United States (whether or not at a

7

> designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1).  And all applicants for admission must be inspected by an immigration officer.  Section 1225(a)(3) provides: "All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."  *Id*. § 1225(a)(3).  The inspection by the immigration officer is designed to determine whether the alien may be lawfully "admitted" to the country or, instead, must be processed for removal.

**Section 1225(b):**  IIRIRA also provided for expedited removal and "Section 240" proceedings.[2]  *See* 8 U.S.C. § 1225(b)(1)-(2).  It also mandated that applicants for admission be detained pending those proceedings.

Section 1225(b)(1) provides for so-called "expedited removal proceedings," *DHS v. Thuraissigiam*, 591 U.S. 103, 109-13 (2020), which apply to a subset of certain aliens—those who: (1) are "arriving in the United States," or (2) have "not been admitted or paroled into the United States"

---

[2] Section 240 of the INA, "titled 'Removal proceedings,' requires that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien.'" *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 489 (9th Cir. 2007) (en banc).  Section 240 is codified at 8 U.S.C. § 1229a.

and have "not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i)-(iii). The immigration officer shall "order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum ... or a fear of persecution." *Id.* § 1225(b)(1)(A)(i). In that event, the alien "shall be detained pending a final determination of credible fear or persecution and, if found not to have such fear, until removed." *Id.* § 1225(b)(1)(B)(iii)(IV); *see also* 8 C.F.R. § 235.3(b)(4)(ii). Any alien found to have established a credible fear of persecution must similarly "be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). An alien processed for expedited removal who does not indicate an intent to apply for asylum or a fear of persecution or who is determined not to have a credible fear is likewise detained until removed. *Id.* § 1225(b)(1)(A)(i), (B)(iii)(IV); *see* 8 C.F.R. § 235.3(b)(2)(iii).

Section 1225(b)(2) is a "catchall provision that applies to all applicants for admission not covered by [subsection (b)(1)]." *Jennings v. Rodriguez,*

9

583 U.S. 281, 287 (2018).[3] It requires that those aliens be detained pending § 240 removal proceedings:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title [§ 240].

8 U.S.C. § 1225(b)(2)(A) (emphasis added); *see* 8 C.F.R. § 235.3(b)(1)(ii) (mirroring § 1225(b)(2)'s detention mandate); *Jennings*, 583 U.S. at 302 (holding that § 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin").

Although § 1225(b)(2) does not itself allow release, DHS may exercise its parole authority to temporarily release an applicant for admission, but "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). But parole "shall not be regarded as an admission of the alien." *Id.*; *Jennings*, 583 U.S. at 288 (discussing parole authority). And when DHS determines that "the purposes of such parole … have been served," the "alien shall … be returned to the custody

---

[3] Section 1225(b)(2)(A) also does not apply to (1) crewmen or (2) stowaways. 8 U.S.C. § 1225(b)(2)(B). In addition, the Executive has discretion to return aliens who have arrived on land from a contiguous territory to that territory pending § 240 removal proceedings. *Id.* § 1225(b)(2)(C).

10

from which he was paroled" and be "dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

**Section 1226:** IIRIRA also created a separate authority addressing the arrest, detention, and release of aliens generally (not "applicants for admission" specifically). *See* 8 U.S.C. § 1226. This provision governs the detention of aliens who have been admitted but later become removable—for example, admitted aliens who overstay their visas, engage in conduct that renders them removable, or are later determined to have been improperly admitted.

The statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Detention under this provision is generally discretionary. The Attorney General "may" either "continue to detain the arrested alien" or release the alien on bond or conditional parole. *Id.* § 1226(a)(1)-(2).[4] DHS

---

[4] Conditional parole under Section 1226(a) is "legally distinct from release on" parole under Section 1182(d)(5)(A). *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 749 (BIA 2023) (following *Matter of Castillo-Padilla*, 25 I. & N. Dec. 257, 258 (BIA 2010) (holding that conditional parole under Section 1226(a) and parole under Section 1182(d)(5) are "distinct and different procedure[s]")); s*ee Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1116 (9th Cir. 2007).

11

makes the initial custody determination. 8 C.F.R. § 236.1(d)(1). The alien may then seek a custody redetermination (*i.e.*, a bond hearing) before an immigration judge and can appeal the judge's decision to the Board of Immigration Appeals ("Board"). 8 C.F.R. §§ 236.1(c)(8), (d), 1236.1(d)(1), 1003.19.

That "default rule" of discretionary detention does not apply to certain aliens who have committed criminal acts or been convicted of certain crimes or raise national security concerns. *Jennings*, 583 U.S. at 288. Section 1226(c) provides that "[t]he Attorney General shall take into custody" certain classes of criminal aliens—those who are inadmissible or deportable because the alien: (1) "committed" certain offenses delineated in 8 U.S.C. §§ 1182 and 1227; or (2) engaged in terrorism-related activities. 8 U.S.C. § 1226(c)(1); *see Nielsen v. Preap*, 586 U.S. 392, 398-99 (2019). The Executive must detain these aliens after "the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1). Such aliens may be released only if DHS determines "that release of the alien from custody is necessary" to protect a witness to a "major criminal activity" or a similar person, and then only if the alien "will not pose a danger" to public safety and is not a flight risk. *Id.* § 1226(c)(4).

In January 2025, Congress amended § 1226(c) through the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025). It requires detention of aliens who: (1) are inadmissible because they are physically present in the United States without admission or parole (8 U.S.C. § 1182(a)(6)(A)), have committed a material misrepresentation or fraud, (*id.* § 1182(a)(6)(C)), or lack required documentation, (*id.* § 1182(a)(7)); and (2) are "charged with, [] arrested for, [] convicted of, admit[] having committed, or admit[] committing acts which constitute the essential elements of" certain listed offenses. *Id.* § 1226(c)(1)(E).

### C. The Government applies § 1225(b)(2)(A) to require detention of all applicants for admission.

For many years after IIRIRA, DHS and most immigration judges treated aliens who illegally entered the United States without admission as being subject to discretionary detention under 8 U.S.C. § 1226(a). *Hurtado*, 29 I. & N. Dec. at 225 n.6. Until this year, however, the Board had not issued any precedential opinion on the appropriate detention authority for such individuals.

On July 8, 2025, DHS "revisited its legal position on detention and release authorities" and issued interim guidance that brought the Executive's practices in line with the statute's plain text. *See* ER-65. DHS concluded that all aliens who enter the country without being admitted are "subject to

13

detention under [8 U.S.C. § 1225(b)] and may not be released from ICE custody except by [8 U.S.C. § 1182(d)(5)] parole." *Id.* As a result, the "only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under [8 U.S.C. § 1226(a)] are aliens admitted to the United States and chargeable with deportability under [8 U.S.C. § 1127]." *Id.*

The Board also adopted this interpretation in *Hurtado*.[5] The Board concluded that § 1225(b)(2)'s mandatory detention regime applies to *all* aliens who entered the United States without inspection and admission:

> Aliens … who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer. Remaining in the United State for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission.'

29 I. & N. Dec. at 228. Thus, under Board precedent, immigration judges "lack authority to hear bond requests or to grant bond to aliens … who are present in the United States without admission." *Id.* at 225.

---

[5] The district court asserted that the Board had published a contrary "position on the proper detention authority" in *Matter of Akhmedov*, 29 I. & N. Dec. 166 (BIA 2025). ER-60. The issue in *Akhmedov* was whether the alien satisfied "his burden of proof to demonstrate that he is not a flight risk." *Id.* at 167. As the Board explained in *Hurtado*, whether the alien "was subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and whether the Immigration Judge had authority to hear the bond request, were not issues presented to the Board in [*Akhmedov*]." *Hurtado*, 29 I. & N. Dec. at 226.

14

## II. Factual Background and Procedural History

### A. Petitioner illegally entered the United States without admission and was detained for removal proceedings.

The basic facts of this case are not in dispute. In 2009, Plaintiff Ramon Rodriguez Vazquez entered the United States without admission or parole. *See* ER-111. He lived in the United States until his arrest in February 2025. ER-159. An immigration judge in Tacoma, Washington denied his request for a bond hearing. ER-111. The judge reasoned that Plaintiff was subject to mandatory detention under § 1225 because he is an applicant for admission. *See id.* at 111–17.

### B. The district court granted a preliminary injunction, certified a class, and granted partial summary judgment.

After being denied bond, Plaintiff filed this Class Action Complaint and Petition for Writ of Habeas Corpus. *See* ER-145. The district court granted a motion for a preliminary injunction and ordered the government to provide a bond hearing. *See* ER-5. The court also certified a class of aliens who: (1) have entered the United States without inspection, (2) are not apprehended upon arrival, and (3) are not subject to 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231. *See* ER-109.

The district court subsequently granted Plaintiff's Partial Motion for Summary Judgment. *See* ER-8. Although it acknowledged "that the INA

15

provisions at issue do not present a straightforward answer," the district court held that detention of class members under § 1225(b)(2) was unlawful. *Id.* at 34, 58. The court reasoned that applying § 1225 to aliens present in the United States without admission would render portions of §§ 1226(c) and 1225(b)(2)(A) superfluous. *Id.* at 38, 44–45. The district court also held that legislative history and longstanding agency practice supported its statutory interpretation. *Id.* at 49–57. The government timely appealed.

## SUMMARY OF ARGUMENT

The INA's plain language requires DHS to detain aliens, like Plaintiff and class members, who are present in the United States without admission. The district court's contrary conclusion flouts the statute's text and subverts congressional intent. The Court should reverse.

**I.** Section 1225 deems all aliens who are "present in the United States" without admission to be "applicants for admission." 8 U.S.C. § 1225(a)(1). And it mandates that all such applicants for admission "shall be detained" during their removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Detention is mandatory, regardless of the duration of the alien's presence in the United States, the alien's distance from the border when apprehended, or the affirmative acts he takes to secure lawful status or relief.

16

**II.** The phrase "seeking admission" in § 1225(b)(2) does not undermine the Government's reading. Under the statute, an alien who is an "applicant for admission" is necessarily "seeking admission." *See* 8 U.S.C. § 1225(a)(3). No additional, affirmative act is needed for an "applicant for admission" to be "seeking admission." That is consistent with the everyday meaning of the terms. As a matter of plain English, a person who is *applying* for something is necessarily *seeking* it. This reading does not render the term "seeking admission" redundant; read consistent with the provision's structure, every term has independent meaning. Even if there were redundancy, "[r]edundancies are common in statutory drafting," and "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton v. Barr*, 590 U.S. 222, 223 (2020).

**III.** The government's reading of § 1225(b)(2) does not render § 1226(c) superfluous. Section 1226(c)'s mandatory detention provisions, including as amended by the Laken Rily Act, govern a significant swath of aliens who are *not* covered by § 1225(b)(2)—for example, admitted aliens who then violate their status. Just because the provisions overlap does not give courts permission to rewrite § 1225(b)(2)'s clear text. Even as to the areas of overlap, § 1226(c) does considerable independent work by

17

restricting the circumstances under which an alien may be released, including on parole.

**IV.** The district court's interpretation would reimpose the same perverse regime that IIRIRA was meant to eliminate—requiring the detention of aliens who present at a port of entry as the law requires but authorizing the release of those aliens who enter the United States in violation of law and make *no effort* to prove admissibility. The Court should not endorse such a backwards outcome—particularly one that plainly subverts congressional intent.

**V.** The Government's interpretation of § 1225(b)(2) is consistent with that of the Supreme Court in *Jennings*, 583 U.S. 281. That case did not address the scope of §§ 1225 and 1226's detention authority. Even so, *Jennings* characterized § 1225(b)(2) consistent with the Government's interpretation as "a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id*. at 287.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's order granting summary judgment. *See e.g.*, *Okonowsky v. Garland*, 109 F.4th, 1166, 1178 (9th Cir. 2024).

18

## ARGUMENT

### I. Section 1225(b)(2) mandates detention of aliens who are present in the United States without having been admitted.

The plain language of § 1225(b)(2) requires detention of all aliens who are present in the United States without admission and are subject to removal proceedings—regardless of how long the alien has been in the United States or how far from the border they ventured. That unambiguous language resolves this case. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 676 (2020) ("Our analysis begins and ends with the text."). The district court erred by holding that § 1225(b)(2)(A) does not apply to aliens who avoid apprehension upon arrival into the country. That reading is incompatible with the clear statutory text and subverts Congress's manifest purposes in adopting § 1225(b)(2)(A).[6]

---

[6] The Government preserves for further review its position that 8 U.S.C. § 1252(f)(1) prohibits the class-wide declaratory judgment here as well as certification of a class pursuant to Fed. R. Civ. P. 23(b)(2), to the extent that order functions like a class-wide injunction. The Government acknowledges that its position is foreclosed by Ninth Circuit precedent. *See Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1123–24 (9th Cir. 2025). Given § 1252(f)(1)'s limitations on classwide relief, any relief the Court might properly order would fall far short of being appropriate relief to the proposed class as a whole. A challenge to the legality of detention is a core habeas claim, and declaratory relief is not appropriate in such habeas cases. *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (declaratory judgment action not appropriate to address "validity of a defense the State may, or may not, raise in a habeas proceeding" in part because "the underlying claim must be adjudicated in a federal habeas proceeding"); *Fusco v. Grondolsky*, No. 17-1062, 2019 WL 13112044, at *1 (1st Cir. June 18, 2019) (declaratory judgment

## A.     The plain language of § 1225(b)(2) mandates detention of applicants for admission.

Under § 1225(a)(1), an "alien present in the United States who has not been admitted . . . shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). "Admission" under the INA means not just physical entry, but "lawful entry … after inspection" by immigration authorities. 8 U.S.C. § 1101(a)(13)(A). An alien who enters the country without inspection remains an applicant for admission, regardless of the duration of the alien's presence in the United States or the alien's distance from the border.

---

action must be dismissed when habeas available). The district court's order demonstrates this point. *See* ER-4 (declaring that class members "are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)."). The district court found that detention of class members under § 1225(b)(2) is unlawful, which is at the core of habeas, and runs afoul of § 1252(f)(1)'s bar on classwide restraints on the operation of § 1225(b)(2). Because the Court cannot grant such relief to the class as a whole, Petitioners cannot meet the requirements of Rule 23(b)(2).

Second, the district court's class-wide declaratory relief cannot be squared with habeas, where the relief is an order of release, 28 U.S.C. § 2241(a), not a declaration of legal rights that can later be enforced. *See Calderon*, 523 U.S. at 747 (1998); *Fusco*, 2019 WL 13112044, at *1; *LoBue v. Christopher*, 82 F.3d 1081, 1082 (D.C. Cir. 1996) ("availability of a habeas remedy in another district ousted us of jurisdiction over an alien's effort to pose a constitutional attack . . . by means of a suit for declaratory judgment"); *Monk v. Sec. of Navy*, 793 F.2d 364, 366 (D.C. Cir. 1986) ("In adopting the federal habeas corpus statute, Congress determined that habeas corpus is the appropriate federal remedy for a prisoner who claims that he is 'in custody in violation of the Constitution . . . of the United States,' . . . . This specific determination must override the general terms of the declaratory judgment . . . statute.").

20

Section 1225(b)(2) further provides that "an alien who is an applicant for admission" "shall be detained" pending removal proceedings if the "alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). The use of the term "shall" denotes that detention is mandatory. *See Jennings*, 583 U.S. at 302. And like subsection (a), subsection (b)(2) makes no exception for the duration of the alien's presence in the country or how far the alien's incursion into the country. *See Altamirano Ramos v. Lyons*, —F. Supp. 3d—, 2025 WL 3199872, at *4 (C.D. Cal. Nov. 12, 2025) ("[T]he statute does not limit the applicability . . . to aliens who have been present in the United States for only some limited period of time, or aliens who were apprehended in the United States within a certain distance from the border."). Aside from those aliens expressly exempted, the plain text mandates that DHS detain all "applicants for admission" who are not "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

Plaintiff and class members fall squarely within the plain text of § 1225. There is no dispute that they have "not been admitted." 8 U.S.C. § 1225(a), (b)(2)(B); *supra*, p. 7. They cannot—and did not—establish that they are "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Therefore, they "shall be detained" for a removal

21

proceeding. *Id.*; *see Altamirano Ramos v. Lyons*, 2025 WL 3199872, at *4; *Xiaoquan Chen v. Almodovar*, No. 1:25-cv-8350, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025); *Candido v. Bondi*, No. 25-cv-867, 2025 WL 3484932 (W.D.N.Y. Dec. 4, 2025); *Topal v. Bondi*, No. 1:25-cv-01612, 2025 WL 3486894 (W.D. La. Dec. 3, 2025); *Cabanas v. Bondi*, 4:25-cv-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025); *Mejia Olalde v. Noem*, No. 1:25-cv-168, 2025 WL 3131942, at *2–3 (E.D. Mo. Nov. 10, 2025); *Sandoval v. Acuna*, No. 6:25-cv-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025);*Rojas v. Olson*, No. 25-cv-1437, 2025 WL 3033967, at *6 (E.D. Wis. Oct. 30, 2025).

## B. The district court's decision disregards the clear text of § 1225(b)(2)(A).

Despite the clear language of § 1225, the district court held that § 1225(b)(2)(A)'s detention mandate applies only to aliens arriving at the border or who are taking affirmative steps toward obtaining admission—not to all aliens who are present in the United States without admission. This Court should correct that error.

### 1. The phrase "seeking admission" does not narrow the scope of § 1225(b)(2)(A).

The district court held that the phrase "seeking admission" in § 1225(b)(2)(A) limits the provision to applicants for admission who are taking affirmative steps to gain admission to the United States—not aliens, like

Plaintiff, who are residing unlawfully in the United States *without* making any effort to gain admission. ER-46–51. That is wrong. The statute itself makes clear that an alien who is an "applicant for admission" *is* "seeking admission."

**a.** Section 1225(a) provides that "[a]ll aliens … who are applicants for admission *or otherwise* seeking admission or readmission … shall be inspected." 8 U.S.C. § 1225(a)(3) (emphasis added). The word "'[o]therwise' means 'in a different way or manner[.]'" *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 535 (2015) (quoting Webster's Third New International Dictionary 1598 (1971)); *see also Att'y Gen. of United States v. Wynn*, 104 F.4th 348, 354 (D.C. Cir. 2024) (same); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963-64 (11th Cir. 2016) (en banc) ("or otherwise" means "the first action is a subset of the second action"). As the Seventh Circuit recognized: "'[O]r otherwise' language 'operates as a catchall: the specific items that precede it are meant to be subsumed by what comes after the 'or otherwise'" clause. *Kleber v. CareFusion Corp.*, 914 F.3d 480, 482-83 (7th Cir. 2019). Being an "applicant for admission" is thus a particular "way or manner" of seeking admission, such that any alien who is an "applicant for admission" *is* "seeking admission" for purposes of § 1252(b)(2)(A). The district court acknowledged

23

§ 1225(a)(3), but completely missed the import of the "or otherwise" language. *Cf.* ER-47.

"Seeking admission" thus includes not only aliens who "entered the United States with visas or other entry documents before their presence became lawful," but also aliens who "entered unlawfully or [were] paroled into the United States but were deemed constructive applicants for admission by operation of section 235(a)(1) of the Act." *Matter of Lemus-Losa*, 25 I & N. Dec. 734, 743 n.6 (BIA 2012) (emphases omitted). As a result, "many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws." *Id.* at 743 (emphasis in original). For example, an alien who previously unlawfully entered the United States and is never admitted, departs, and subsequently submits a literal application for admission to the United States—*e.g.*, obtaining the proper travel documents, such as a visa, and presenting at a port of entry for inspection—is deemed to be "*again* seek[ing] admission" to the United States. *Id.* at 743-44 & n.6 (emphasis added) (quoting and discussing 8 U.S.C. § 1182(a)(9)(B)(i)(I)-(II)). Mere presence without admission *is* seeking admission "by operation of law." *Id.*

24

The everyday meaning of the statutory terms also supports this reading. One may "seek" something without "applying" for it—for example, one who is "seeking" happiness is not "applying" for it. But one *applying* for something is necessarily *seeking* it. *Compare* Webster's New World College Dictionary 69 (4th ed.) ("apply" means "[t]o make a formal request (*to* someone *for* something)"), *with id.* at 1299 ("seek" means "to request, ask for"); *accord Mejia Olalde*, 2025 WL 3131942, at *3 ("To 'seek' is a synonym of to 'apply' for."). For example, a person who is "applying" for admission to a college or club is "seeking" admission to the college or club. *See* The American Heritage Dictionary of the English Language 63 (1980) ("American Heritage Dictionary") ("apply" means "[t]o request or *seek* employment, acceptance, or *admission*") (emphasis added). Likewise, an alien who is "applying" for admission to the United States (*i.e.*, an "applicant for admission") is necessarily "seeking admission" to the United States. *Rojas*, 2025 WL 3033967, at *8 ("seeking admission" is "best read as simply another way of referring to aliens who are applicants for admission").

All of this confirms that neither the duration of an alien's unlawful presence in the United States, nor the distance from the border when apprehended alters the legal reality that an "applicant for admission" is "seeking admission." "Congress knows how to limit the scope" of the INA

"geographically and temporally when it wants to." *Mejia Olalde*, 2025 WL 3131942, at *4. For example, § 1225(b)(1) may apply to aliens "arriving in the United States" or who "ha[ve] been physically present in the United States continuously for [a] 2-year period." 8 U.S.C. § 1225(b)(1). So, if "Congress meant to say that an alien no longer is 'seeking admission' after some amount of time in the United States, Congress knew how to do so." *Mejia Olalde*, 2025 WL 3131942, at *4. It did not. To the contrary, § 1225(a)(1)'s inclusion of *both* aliens "arriving" and those "present in the United States" confirms that *all* aliens who are not admitted are "applicants for admission," regardless of the length of their presence in the country.

None of this is to say, however, that "seeking admission" has no meaning beyond "applicant for admission." As § 1225(a)(3) shows, being an "applicant for admission" is only *one* "way or manner" of "seeking admission," *supra*, pp. 23–24—not the exclusive way. For example, lawful permanent residents returning to the United States may not be "applicants for admission," but they still may be deemed to be "seeking admission" in some circumstances. *See* 8 U.S.C. § 1101(a)(13)(C). Stowaways, too, are not "applicants for admission" but are still subject to inspection for admissibility. *See* 8 U.S.C. §§ 1182(a)(6)(D); 1225(a)(2). Moreover, given the complexity of the statutory scheme and IIRIRA's changes, Congress's use of the phrase

26

"or otherwise seeking admission" ensured that all aliens would be subject to § 1225(a)'s inspection requirement—including aliens who entered before IIRIRA's effective date.

To be sure, the Government previously operated under a different understanding of § 1225(b)(2)(A), such that aliens present in the United States who had entered without admission could be detained under § 1226(a). *See Maldonado*, 2023 WL 5804021, at *3; *but see* 8 C.F.R. § 235.3(b)(1)(ii) (requiring detention of applicants for admission pending removal proceedings "in accordance with section 235(b)(2) of the Act"). But past practice does not justify disregard of clear statutory language. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015); *cf.* ER-56–61 (quoting 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997)). Indeed, the Supreme Court has rejected longstanding government interpretations that it has deemed incompatible with the INA specifically. *See Pereira v. Sessions*, 585 U.S. 198, 204-05, 208-09 (2018). Therefore, a court must always interpret the statute "as written." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019); *see Mejia Olalde*, 2025 WL 3131942, at *5 (rejecting the prior interpretation of § 1225(b)(2) as "nontextual" and unsupported by any "thorough, reasoned analysis"); *Rojas*, 2025 WL

27

3033967, at *9 ("Prior administrations' generous interpretation of these laws … do not and cannot rewrite it.").

**b.**     The Government's reading does not render the term "seeking admission" redundant of the phrase "applicant for admission" in § 1252(b)(2)(A).  The structure of § 1252(b)(2)(A) demonstrates that each phrase has independent meaning.

Section 1225(b)(2)(A) is composed of a primary (operative) clause, which is modified by two prefatory clauses offset by commas.  The operative clause requires detention of aliens "seeking admission" who cannot show their admissibility ("if the examining immigration officer …, [then] the alien shall be detained").  That clause's mandate is modified by two prefatory clauses.  The first excludes aliens covered by subparagraphs (B) and (C).  8 U.S.C. § 1225(b)(2)(A) ("[s]ubject to …").  Like the first, the second prefatory clause narrows the operative clause to a subset of "case[s]"—namely, "in the case of an alien who is an applicant for admission…." *Id.* (emphasis added).  Section 1225(b)(2) thus lays out a general command (the operative clause), and then qualifies that directive:  "[I]f an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," then "the alien shall be detained"—but only if (1) the alien is not covered by subparagraphs (B) or

28

(C); and (2) the alien is seeking admission by being "an applicant for admission" under § 1225(a)(1). No portion of the statute is redundant.

Even if it were otherwise, the canon against surplusage "is not a silver bullet." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019). "Redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Barton*, 590 U.S. at 239. As the Supreme Court "has often recognized: Sometimes the better overall reading of a statute contains some redundancy." *Id.* (quoting *Rimini St., Inc.*, 586 U.S. at 346) (internal quotations omitted). For that reason, "the surplusage cannon ... must be applied with statutory context in mind," *United States v. Bronstein*, 849 F.3d 1101, 1110 (D.C. Cir. 2017), and "redundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton*, 590 U.S. at 239.

Those principles apply with full force here. Under a straightforward reading of the statute, an "applicant for admission" is "seeking admission." Even if that reading produced some redundancy in § 1225(b)(2)(A), that is "not a license to rewrite" § 1225 "contrary to its text." *Barton*, 590 U.S. at 239; *see Heyman v. Cooper*, 31 F.4th 1315, 1322 (11th Cir. 2022) ("Th[e]

29

principle [that drafters do repeat themselves] carries extra weight where ... the arguably redundant words that the drafters employed ... are functional synonyms."). And that is especially true, where that re-writing would be so clearly contrary to Congress's objective in passing the law. *Infra*, pp. 37–39.

**c.** Even if "seeking admission" required some separate affirmative conduct by the alien, an applicant for admission who attempts to remain in the United States, rather than trying to voluntarily depart is "seeking admission."

Section 1225(b)(2)(A) applies to an alien who is present in the United States without admission, even for years, and is not concerned with the alien's pre-inspection conduct. Rather, the statute's use of present tense language ("seeking" and "determines") shows that its focus is a specific point in time—when "the examining immigration officer" is making a "determin[ation]" regarding the alien's admissibility. 8 U.S.C. § 1225(b)(2)(A). At *that* point, the alien is "seeking"—*i.e.*, presently "endeavor[ing] to obtain," American Heritage Dictionary, *supra*, at 1174—admission into the United States. If it were otherwise, the applicant would "depart immediately from the United States" in lieu of removal proceedings. *See* 8 U.S.C. § 1225(a)(4). An applicant who forgoes that statutory option and instead endeavors to remain in the United States through contested

removal proceedings in which the alien has the "burden of establishing that [he] is clearly and beyond a doubt entitled to be admitted" or satisfies the criteria for "relief from removal," 8 U.S.C. § 1229a(c)(2)(A), (c)(4)—is plainly "endeavor[ing] to obtain" admission to the United States. American Heritage Dictionary, *supra*, at 1174.

### C. Section 1226 does not support the district court's reading.

The district court reasoned that the Government's interpretation would render "meaningless" and "superfluous" portions of § 1226(c), which contains a separate mandatory detention provision for certain aliens. *See* ER-42–45. That is wrong. Although § 1226(c) and § 1225(b)(2) overlap for some aliens, each provision has independent effect. And any incidental overlap is no basis for re-writing unambiguous statutory text.

1. To begin, there is no colorable argument that the Government's interpretation of § 1225(b)(2)(A) renders § 1226(a)'s discretionary detention authority superfluous. And the district court did not conclude otherwise. ER-42–44. Section 1226(a) authorizes any alien to be "arrested and detained" pending removal proceedings. It also provides the Government also "may release the alien" on bond or conditional parole. 8 U.S.C. § 1226(a). The provision provides authority to detain a large group of aliens who are not "applicants for admission" subject to § 1225(b)(2)(A), *see*

31

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 566 U.S. 639, 645 (2012) ("the specific governs the general")—that is, aliens who have been admitted to the United States but are now deportable and subject to removal proceedings under § 1229a. For example, detention of aliens who have overstayed their visas is governed by § 1226(a), because those aliens (unlike Plaintiff) were admitted to the United States.

**2.** The Government's interpretation does not render § 1226(c) superfluous. Section 1226(c) is the exception to § 1226(a)'s discretionary detention regime. It forces the Executive to detain "any alien" who is deportable or inadmissible for having committed specified offenses or engaged in terrorism-related actions "when the alien is released" from the custody of another law enforcement entity. *See* 8 U.S.C. § 1226(c)(1)(A)-(E). Section 1226(c) and § 1225(b)(2) apply to significant groups of aliens not encompassed by the other.

**a.** Most obvious, § 1226(c)(1) requires the Executive to detain aliens who have been admitted to the United States and are now "deportable." *See* 8 U.S.C. § 1226(c)(1)(B). By contrast, § 1225(b)(2) has no application to admitted aliens. Moreover, § 1226(c)(1) requires detention of aliens who are "inadmissible" on certain grounds. *See* 8 U.S.C. § 1226(c)(1)(A), (D), (E). Here too, § 1226(c) sweeps more broadly than § 1225(b)(2), because the

32

referenced grounds cover aliens who are inadmissible but were erroneously admitted. *See* 8 U.S.C. § 1227(a), (a)(1)(A) (providing for the removal of "[a]ny alien … in and admitted to the United States," including "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at the time…." (emphasis added)). Finally, as noted above, § 1225(b)(2)(A) does "not apply to an alien … who is a crewman" or "a stowaway," 8 U.S.C. § 1225(b)(2)(B)-(C), but § 1226(c) does apply to those aliens who are inadmissible or deportable on one of the specified grounds—aliens who are not members of the class.

**b.** Section 1226(c) also differs from § 1225(b)(2) in another crucial way—it narrows the circumstances under which aliens may be released from mandatory detention. Recall that for aliens subject to mandatory detention under § 1225(b)(2), IIRIRA allows the Executive to "temporarily" parole them "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(b)(5). Section 1226(c)(1) takes that option off the table if the alien has committed offenses or engaged in conduct specified in § 1226(c)(1)(A)-(E). As to those aliens, § 1226(c) authorizes their release only if "necessary to provide protection to" a witness or a similar person "and the alien satisfies the Attorney General that the alien will not

pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(4).

**c.** The Government's reading also does not render "superfluous" the recent amendment of § 1226(c) through the Laken Riley Act. *See* ER-43–45. That law requires mandatory detention of certain criminal aliens who are "inadmissible" under 8 U.S.C. § 1182(a)(6)(A), (a)(6)(C), or (a)(7). *See* 8 U.S.C. § 1226(c)(E)(i)-(ii). Even then, the Laken Riley Act "may apply to situations where §1225 might not." *Mejia Olalde*, 2025 WL 3131942, at *4 (citing 8 U.S.C. §1182(a)(6)(C)(i)). As with the other grounds of "inadmissibility" listed in § 1226(c), both (a)(6)(C) and (a)(7) may apply to inadmissible aliens who were admitted in error, as well as those never admitted. *See Mejia Olalde*, 2025 WL 3131942, at *4 (E.D. Mo. Nov. 10, 2025) (noting that "the Laken Riley Act may apply to situations where § 1225 might not" (citing 8 U.S.C. § 1182(a)(6)(C)(i))). Again, § 1225(b)(2) has no application to aliens admitted in error.

To be sure, the Laken Riley Act's application to aliens who are inadmissible under §1182(a)(6)(A)—for being "present … without being admitted or paroled"—overlaps with § 1225(b)(2)(A). But again, "[r]edundancies are common in statutory drafting," and are "not a license to rewrite or eviscerate another portion of the statute contrary to its text."

34

*Barton*, 590 U.S. at 239; *see Mejia Olalde*, 2025 WL 3131942, at *4 ("even assuming there were surplusage, that cannot trump the plain meaning of § 1225(b)(2)"). In any event, the canon against surplusage is "weak" when applied, as here, to "acts of Congress enacted at widely separated times." *Mejia Olalde*, 2025 WL 3131942, at *5; *see Rojas*, 2025 WL 3033967, at *9 ("legislation passed in 2025 has little bearing on the meaning of legislation enacted in 1996"). Thus, the fact that the Laken Riley Act amendments were passed "just months ago" *hurts*, rather than helps, the district court's rationale. *Cf.* ER-43. And the canon against surplusage is especially weak where, as here, there will be overlap under any possible reading of the statute. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 106 (2011) ("[T]he canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute") (internal quotation omitted). After all, this portion of the Laken Riley Act requires detention of "arriving aliens" and "applicants for admission" who are taking affirmative steps toward admission, as long as they meet the offense criteria, *see* 8 U.S.C. § 1226(c)(1)(E)(ii)—but Plaintiff and the district court would agree that those aliens are subject to § 1225(b)(2)(A), too. Some redundancy is unavoidable.

In any event, § 1226(c) still does independent work—and therefore does not render the Laken Riley Act "entirely redundant," *cf.*, ER-45—by

35

preventing the Executive from releasing the specified aliens on parole. *Supra*, pp. 10–11. In fact, Congress's desire to further limit the parole power with respect to criminal aliens was one reason it enacted the Laken Riley Act. The Act was adopted in the wake of a heinous murder committed by an inadmissible alien who was "paroled into this country through a shocking abuse of that power," 171 Cong. Rec. at H278 (daily ed. Jan. 22, 2025) (Rep. McClintock), and an abdication of the Executive's "fundamental duty under the Constitution to defend its citizens," 171 Cong. Rec. at H269 (Rep. Roy). The Act thus reflects a "congressional effort to be doubly sure," *Barton*, 590 U.S. at 239, that unadmitted criminal aliens are not paroled into the country through an abuse of the narrow parole authority.

The district court argued that Congress passed the Laken Riley Act "against the backdrop of longstanding agency practice applying § 1226(a) to inadmissible noncitizens already residing in the country." *Id.* But the fact that Congress may have legislated against the backdrop of an *incorrect* application of § 1225(b)(2)(A) does not justify judicially re-writing that provision to eliminate a redundancy in a later enactment. *Supra*, pp. 27–28; *see also Barton*, 590 U.S. at 239.

36

**D.** **The district court's narrow interpretation subverts Congressional intent.**

The district court's reading is not only textually baseless, it also subverts IIRIRA's express goal of eliminating preferential treatment for aliens who enter the country unlawfully. *See King v. Burwell*, 576 U.S. 473, 492 (2015) (rejecting interpretation that would lead to result "that Congress designed the Act to avoid"); *New York State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes.").

Recall that one of IIRIRA's express objectives was to dispense with the perverse pre-1996 regime under which aliens who entered the United States unlawfully were given "equities and privileges in immigration proceedings that [were] not available to aliens who present[ed] themselves for inspection" at the border, including the opportunity to request release on bond. House Rep., *supra*, at 225. The lower court's interpretation would restore the very regime Congress sought to discard. It would require detention for those who present themselves for inspection at the border in compliance with law, yet grant bond hearings to aliens who evade immigration authorities, enter the United States unlawfully, and remain here unlawfully for years or even decades until an involuntary encounter with immigration authorities. That is *exactly* the "perverse incentive to enter"

37

unlawfully, *Thuraissigiam*, 591 U.S. at 140, that IIRIRA sought to eradicate. This Court should reject any interpretation that is so transparently subversive of Congress's stated objective. *King*, 576 U.S. at 492.

The district court tried to downplay the motivations for IIRIRA and § 1225 on the theory that Congress was only concerned with putting aliens "on equal footing in <u>removal</u> proceedings," and "creating a level playing field in removal proceedings 'says nothing about detention pending the outcome of those proceedings.'" ER-54–55. This makes no sense. As the district court acknowledged, aliens who entered unlawfully (rather than presenting at a port of entry) "could take advantage of the greater procedural and substantive rights afforded in deportation proceedings," *Torres*, 976 F.3d at 927-29, and one such "right[]" afforded was "the right to request release on bond," *Hurtado*, 29 I. & N. Dec. at 223; *supra*, pp. 4–6. Congress could not create a "level playing field" in removal proceedings without addressing "detention pending the outcome of those proceedings."

The Government's reading, by contrast, not only adheres to the statute's text and congressional intent, but it also brings the statute in line with the longstanding "entry fiction" that courts have employed for well over a century to avoid giving favorable treatment to aliens who have not been lawfully admitted. Under that doctrine, all "aliens who arrive at ports of

38

entry … are treated for due process purposes as if stopped at the border," including aliens "paroled elsewhere in the country for years pending removal" who have developed significant ties to the country. *Thuraissigiam*, 591 U.S. at 139 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). For example, *Kaplan v. Tod*, 267 U.S. 228 (1925), held that an alien who was paroled for nine years into the United States was still "regarded as stopped at the boundary line" and "had gained no foothold in the United States." *Id.* at 230; *see also Mezei*, 345 U.S. at 214-15. The "entry fiction" thus prevents favorable treatment of aliens who have not been admitted—including those who have "entered the country clandestinely." *Yamataya v. Fisher*, 189 U.S. 86, 100 (1903). IIRIRA sought to implement that same principle with respect to detention. The Government's reading is true to that purpose; the district court's reading subverts it.

### E. The Supreme Court's decision in *Jennings* supports the Government's interpretation.

The Government's interpretation is consistent with the Supreme Court's decision in *Jennings*, 583 U.S. 281. In that case, the Court reviewed a decision that applied constitutional avoidance to "impos[e] an implicit 6-month time limit on an alien's detention" under §§ 1225(b) and 1226. 583 U.S. at 292. The Court held that neither provision is so limited. *Id.* at 292, 296-306. In reaching that holding, the Court did not—and did not need to—

resolve the precise groups of aliens subject to § 1225(b) or § 1226. Nonetheless, consistent with the Government's reading, the Court recognized in its description of § 1225(b) that "Section 1225(b)(2) …. serves as a catchall provision that applies to all applicants for admission not covered by §1225(b)(1)." *Id.* at 287.

To be sure, *Jennings* described the detention authorities in §§ 1225(b) and 1226, and in that context summarized § 1226 as applying to aliens "already in the country":

> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

583 U.S. at 289; *see also id.* at 288 (characterizing § 1226 as applying to aliens "once inside the United States"). But "[t]he language of an opinion is not always to be parsed [like the] language of a statute," and instead "must be read with a careful eye to context." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373-74 (2023) (quotation omitted). When describing the scope of § 1226 in particular, *Jennings* refers to aliens "present in the country" who are removable under 8 U.S.C. § 1227(a)—a provision that applies *only* to admitted aliens. *See* 583 U.S. at 288. The Government's interpretation is perfectly consistent with that understanding: it allows that § 1226 is the

40

exclusive source of detention authority for the substantial category of aliens who are were admitted into the United States but are now removable. *Supra*, pp. 31–32. Indeed, the district court acknowledged that *Jennings* "does not directly address the question presented." ER-52.

Moreover, nothing in the quoted language from *Jennings* suggests that § 1226 is the *sole* detention authority for *every* "alien[] already in the country," and the passage's use of the word "certain" conveys the opposite. At a minimum, the quoted language is ambiguous and such uncertain dicta is insufficient to displace the statute's text and the manifest congressional purpose; that is especially so, as no part of the holding in *Jennings* required resolution of the precise scope of §§ 1225(b) and 1226.

## CONCLUSION

The Court should reverse the district court's order granting of partial summary judgment for Plaintiff.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
*Civil Division*

YAAKOV M. ROTH
*Principal Deputy Assistant*
*Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney*
*General*

BENJAMIN HAYES
*Senior Counsel to the Assistant*
*Attorney General*

VICTOR MERCADO M. SANTANA
Senior Litigation Counsel

IAN S. LAM
Trial Attorney

 *s/ Michael D. Ross*

MICHAEL D. ROSS
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
TEL: (202) 506-0754

*Counsel for Defendants-Appellants*

42

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on December 22, 2025.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

*s/ Michael D. Ross*
MICHAEL D. ROSS

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,274 words, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f).  I further certify that this brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in proportionally-spaced 14-point Georgia type.


*s/ Michael D. Ross*
MICHAEL D. ROSS

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-6842

I am the attorney or self-represented party.

**This brief contains** 9,274 **words, including** 0 **words** manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Michael D. Ross **Date** December 22, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*