**No. 25-6842**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

RAMON RODRIGUEZ VAZQUEZ, on behalf of himself and all others similarly situated

*Plaintiff-Appellee,*

v.

LAURA HERMOSILLO, Seattle Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement (ICE), et al.,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the Western District of Washington
No. 3:25-cv-05240 (Cartwright, J.)

———————————

## REPLY BRIEF OF APPELLANTS

———————————

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
General

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant
Attorney General

ELIZABETH HEDGES
Counsel to the Assistant
Attorney General

VICTOR M. MERCADO-SANTANA
Senior Litigation Counsel

IAN S. LAM
MICHAEL D. ROSS
Trial Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 506-0754

*Attorneys for Defendants-
Appellants*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................1

ARGUMENT ....................................................................... 3

   I.   Section 1225(b)(2) mandates detention of aliens, like Plaintiff, who are present in the United States without having been admitted. ... 3

      A. The plain language of 1225 dictates that all applicants for admission are "seeking admission." .................................... 3

      B. Plaintiff's interpretation of "seeking admission" distorts the statutory scheme. ...............................................13

      C. At a minimum, Plaintiff is "seeking admission" under his own interpretation. .............................................15

   II.   Section 1226 does not justify ignoring the unambiguus language of 1225. ......................................................16

      A. Section 1226(a) does not displace 1225(b)'s clear text. .......16

      B. Section 1226(c) does not support Plaintiff's reading..........21

   III.   Plaintiff's interpretation subverts express Congressional intent. ..................................................... 28

   IV.   Constitutional avoidance does not apply here. ........................... 29

CONLUSION ..................................................... 32

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Altamirano Romas v. Lyons*,
  2025 WL 3199872 (C.D. Cal. Dec. 19, 2025) ............................................14

*Atl. Richfield Co. v. Christian*,
  590 U.S. 1 (2020) ...................................................................................... 10

*Bankamerica Corp. v. United States*,
  462 U.S. 122 (1983) ................................................................................... 20

*Barton v. Barr*,
  590 U.S. 222 (2020)....................................................................13, 25, 26

*Chen v. Almodovar*,
  2026 WL 100761 (S.D.N.Y. Jan. 14, 2026) ...............................................14

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
  543 U.S. 157 (2004)................................................................................... 22

*Demore v. Kim*,
  538 U.S. 510 (2003) ...........................................................................22, 30

*Department of Homeland Security v. Thuraissigiam*,
  591 U.S. 103 (2020)....................................................................................31

*Dubin v. United States*,
  599 U.S. 110 (2023) ................................................................................... 11

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018) ...................................................................................16

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005)....................................................................................19

*Food Mktg. Inst. v. Argus Leader Media*,
  588 U.S. 427 (2019).....................................................................................19

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010)..................................................................... 32

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018)........................................................................... 16, 29

*Khoury v. Asher*,
  3 F. Supp. 3d 877 (W.D. Wash. 2014)...................................................... 23

*Kleber v. CareFusion Corp.*,
  914 F.3d 480 (7th Cir. 2019) ..................................................................4, 9

*Lamie v. U.S. Trustee*,
  540 U.S. 526 (2004)...................................................................................... 9

*Landon v. Plascencia*,
  459 U.S. 21 (1982) .......................................................................................31

*Leng May Ma v. Barber*,
357 U.S. 185 (1958) ...................................................................31

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ................................................................ 20

*Lopez v. Dir. of Enforcement & Removal Operations*,
--- F. Supp. 3d ---, 2026 WL 261938 (M.D. Fla. Jan. 26, 2026) ..............14

*Matter of Lemus-Losa*,
25 I. & N. Dec. 734 (BIA 2012) ..................................................... 11

*Matter of Yajure Hurtado*,
29 I. & N. Dec. 216 (BIA 2025) ................................................. 29

*Mejia Olalde v. Noem*,
2025 WL 3131942 (E.D. Mo. Nov. 10, 2025) ........................... 4, 10

*Montoya v. Holt*,
2025 WL 3733302 (W.D. Okla. Dec. 26, 2025)...............................passim

*Nielsen v. Preap*,
586 U.S. 392 (2019) ............................................................ 22, 23

*Pereira v. Sessions*,
585 U.S. 198 (2018)................................................................21

*Preap v. Johnson*,
303 F.R.D. 566 (N.D. Cal. 2014) ............................................. 23

*RadLAX Gateway Hotel*,
566 U.S. ............................................................................17

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
556 U.S. 639 (2012)................................................................ 2

*Remini St., Inc. v. Oracle USA, Inc.*,
586 U.S. 334 (2019) .............................................................. 10

*Rojas v. Olson*,
2025 WL 3033967 (E.D. Wisc. Oct. 30, 2025) ........................... 10

*Shady Grove Orthopedic Assoc., P.A., v. Allstate Ins. Co.*,
559 U.S. 393 (2010)................................................................ 24

*Shen v. Garland*,
109 F.4th 1144 (9th Cir. 2024) ................................................31

*South Dakota v. Yankton Sioux Tribe*,
552 U.S. 329 (1998)................................................................ 27

*Stenberg v. Carhart*,
530 U.S. 914 (2000) .............................................................. 11

*TDX Energy, LLC v. Chesapeake Operating, Inc.*,
857 F.3d 253 (5th Cir. 2017) ..................................................... 9

*Torres v. Barr*,
976 F.3d 918 (9th Cir. 2020)............................................. 10, 11

*Torres v. Lynch,*
    578 U.S. 452 (2016) ................................................................ 9
*United States v. Stevens,*
    559 U.S. 460 (2010) ..........................................................29, 30
*Villarreal v. R.J. Reynolds Tobacco Co.,*
    839 F.3d 958 (11th Cir. 2016) ............................................. 8
*Wagner v. FEC,*
    717 F.3d 1007 (D.C. Cir. 2013) ......................................... 27
*Winter v. NRDC,*
    555 U.S. 7 (2008) ......................................................... 2, 3, 4
*Yates v. United States,*
    574 U.S. 528 (2015) .....................................................2, 12
*Zadvydas v. Davis,*
    533 U.S. 678 (2001) ............................................................ 30

## Statutes

8 U.S.C. §1101(a)(13)(A) ......................................................... 11
8 U.S.C. §1182(a)(2)(A) ............................................................ 23
8 U.S.C. § 1182(a)(6)(C) ...........................................................24
8 U.S.C. § 1182(a)(7) ................................................................24
8 U.S.C. §1225(a)(1) ................................................ 3, 6, 7, 11
8 U.S.C. §1225(a)(3) ................................................... 4, 6, 8
8 U.S.C. §1225(b)(2)(A) ......................................................1, 29
8 U.S.C. §1225(b)(2)(C) ...........................................................13
8 U.S.C. §1225(b)(3) ................................................................ 25
8 U.S.C. §1226(a) ...............................................................16, 18
8 U.S.C. §1226(c)(1)(A) ......................................................... 26
8 U.S.C. §1226(c)(1)(E) ......................................................... 27
8 U.S.C. §1227(a)(1)(A) ...........................................................17
8 U.S.C. §1229a ........................................................................ 3
8 U.S.C. §1229a(a)(1) ..............................................................15
8 U.S.C. §1229a(c)(2)(A) ..........................................................15
8 U.S.C. §1252 (1995) ............................................................. 18
8 U.S.C. §1325(a) .................................................................... 28
U.S.C. §1225(a)(1) .................................................................. 11
U.S.C. §1225(a)(4) .................................................................... 5

**<u>Regulations</u>**

8 C.F.R. §235.3(b)(1)(ii) ............................................................... 20

**<u>Other Authorities</u>**

62 Fed. Reg. 10 ............................................................................ 20

## INTRODUCTION

The Immigration and Nationality Act (INA) requires the Executive to detain any "applicant for admission" who cannot show he is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §1225(b)(2)(A). There is no dispute that Plaintiff and class members are "applicants for admission" and have not shown they are "clearly and beyond a doubt" admissible. The statute's plain text resolves this case and requires reversal.

Plaintiff's primary contention is that the phrase "seeking admission" must be read in a colloquial way to only encompass aliens who arrive at a port of entry and voluntarily subject themselves to inspection to obtain admission to the United States. That reading defies the statute's clear language. Most notably, Plaintiff disregards the import of §1225(a)(3), which makes crystal clear that all "applicants for admission" are necessarily "seeking admission" by operation of law under the defined terms adopted by Congress. Ignoring the words Congress actually used, Plaintiff urges an agrammatical reading that is at war with numerous other cases interpreting similar language, not to mention the English language.

His reading of "seeking admission" also is internally incoherent—asking the Court to read "seeking" without reference to the defined term ("admission") or the term of art ("applicant for admission") to which it

1

relates.  That defies the basic command that a statute's language must be discerned based on "the specific context in which the language is used." *Yates v. United States*, 574 U.S. 528, 537 (2015).  Ultimately, Plaintiff's interpretation would require disparate treatment Congress never could have intended—favoring aliens who intentionally evade inspection and enter the country in violation of law by affording them bond hearings, while mandating detention of those who present at a port of entry in compliance with law.  In Plaintiff's view, "no good deed goes unpunished." *Winter v. NRDC*, 555 U.S. 7, 31 (2008).  Those that actually commit the crime of illegal entry (8 U.S.C. §1325) are rewarded with access to bond hearings, which their law-abiding counterparts are denied.  That is the exact perverse regime Congress sought to abolish through §1225.

Despite §1225's clear text, Plaintiff asks the Court to ignore it based on the separate detention authorities in § 1226.  His arguments based on § 1226 rely on inference, conflicting legislative history, and inconsistent Executive interpretations—nothing remotely sufficient to displace the clear terms of §1225.  Here, §1225 is directly on point and it is axiomatic that "the specific controls the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 556 U.S. 639, 645 (2012).

# ARGUMENT

## I. Section 1225(b)(2) mandates detention of aliens, like Plaintiff, who are present in the United States without having been admitted.

Section 1225(a) provides that an alien who is "present in the United States who has not been admitted or who arrives in the United States … shall be deemed … an applicant for admission." 8 U.S.C. §1225(a)(1). And any such alien "shall be detained for proceedings under [8 U.S.C. §1229a]" if the alien "is not clearly and beyond a doubt entitled to be admitted." *Id.* §1225(b)(2)(A). Plaintiff does not dispute that he is an "applicant[] for admission," and does not claim to be "clearly and beyond a doubt entitled to be admitted." Therefore, he (and class members) must be detained pending removal proceedings.

### A. The plain language of §1225 dictates that all applicants for admission are "seeking admission."

Plaintiff tries to escape the plain meaning of §1225 based on the phrase "seeking admission" in §1225(b)(2)(A). According to Plaintiff, "§1225(b)(2)(A) addresses detention related to inspection and admission at the border rather than detention for apprehensions that occur in the interior." Answering Br. 38. His interpretation places three atextual limitations on 1225(b)(2)(A): a "temporal" limitation, Answering Br. 39, a geographic limitation ("at the border"), *id.* at 38, and a purpose limitation,

3

*id.* at 40 ("seeking lawful entry"). The government has already explained why such limitations are untenable, Opening Br. 22–31, and Plaintiff's brief offers nothing to change that conclusion.

1.     Section 1225(a)(3) makes clear that an "applicant for admission" *is* "seeking admission" for purposes of §1225(b)(2)(A)—no affirmative action is needed. Opening Br. 17. That provision states that "all aliens ... who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected." 8 U.S.C. §1225(a)(3) (emphasis added). As the government explained, such "'or otherwise' language 'operates as a catchall: the specific items that precede it are meant to be subsumed by what comes after the 'or otherwise'" clause. *Kleber v. CareFusion Corp.*, 914 F.3d 480, 483 (7th Cir. 2019); *see* Opening Br. 23–24. Thus, an "applicant for admission" *is* "seeking admission" for purposes of Section 1225(b)(2)(A). *See Montoya v. Holt*, 2025 WL 3733302, at *8-9 (W.D. Okla. Dec. 26, 2025) ("The word 'otherwise' establishes that 'aliens ... seeking admission' is the category to which 'applicants for admission' belong."); *Mejia Olalde v. Noem*, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025). That is consistent with common sense and everyday English: A person may "seek" something without "applying" for it, but anyone

4

"applying" for something is necessarily "seeking" it.  Opening Br. 25; *see Montoya*, 2025 WL 3733302, at *8, *10.

This is not, as Plaintiff says, a way of reading "seeking admission" that has it "add[ing] nothing beyond the term 'applicant for admission.'" Answering Br. 42.  Section 1225(a)(3) does not equate "applicant for admission" with aliens "seeking admission."  Opening Br. 26.  It only provides that being an "applicant for admission" is *one* "way or manner" of seeking admission.  *Id.*  "Seeking admission" is a broader category, which is why Congress would not have included that phrase in §1225(a)(1)'s definition of "applicant for admission."  Opening Br. 23–24; *Montoya*, 2025 WL 3733302, at *9 ("§1225(a)(3) leaves open the possibility that some aliens who are not applicants for admission may nonetheless be 'seeking admission.' But it does *not* leave open the possibility that some 'applicants for admission' are not 'seeking admission.").

Section 1225(a)(4) reinforces that "applicant for admission" is a way or manner of "seeking admission."  That provision states that "[a]n alien applying for admission may … be permitted to withdraw the application for admission and depart immediately from the United States."  8 U.S.C. §1225(a)(4).  "A plain language reading of the phrase '*applicant* for admission' alongside the phrase '*application* for admission' lends the

inference that the 'application' to be 'withdrawn[]' is that of the 'applicant for admission.'" *Montoya*, 2025 WL 3733302, at *10. That "in turn lends the straightforward inference that 'applicants for admission' [are] apply[ing] for admission until taking the actions prescribed by §1225(a)(4). *Id.* at *10. That makes sense: Because an alien's status as an "applicant for admission" turns on the alien's presence "*in the United States*," 8 U.S.C. §1225(a)(1) (emphasis added), "depart[ing] … from the United States" would necessarily "withdraw" status as "applicant for admission," *id.* §1225(a)(4). Thus, an alien is "*applying* for admission" as long as he is an "applicant for admission," and (again) anyone "applying" for admission is necessarily "seeking" it. *Montoya*, 2025 WL 3733302, at *8, *10 ("What individual is 'applying' for a given legal status without 'seeking' such status?").

2. Plaintiff ignores the cases the government cited adopting this interpretation of "otherwise" clauses. Opening Br. 23. Instead, he argues that "the phrases 'applicants for admission' and 'seeking admission'" in §1225(a)(3) "are expressly disjunctive and operate to ensure that all persons entering, reentering, or transiting through the United States are subject to inspection." Answering Br. 44. That theory—which Plaintiff cites only one district-court decision to support—would distort the statutory scheme. The statute plainly contemplates the inspection of *all* unadmitted aliens, not just

6

those entering or transiting through: §1225(a)(1)'s definition of "applicant for admission" encompasses all aliens who are "present in the United States [and] ha[ve] not been admitted." 8 U.S.C. §1225(a)(1). Likewise, the expedited removal provision—entitled "Inspection of applicants for admission"—provides for the processing of certain aliens who evaded inspection and have been in the country for up to two years. 8 U.S.C. §1225(b)(1)(A)(i), (iii). If §1225(a)'s "inspection" requirement applies only to aliens who *want* to be inspected—*i.e.*, aliens who present at a port of entry—that would nullify the entire point of having an inspection requirement.[1]

Plaintiff also claims that the government's reading cannot be correct because the provision also refers to "readmission" and "transit," and not all "applicants for admission" are "seeking readmission to or transit through the United States." Answering Br. 43. But there is no meaningful difference between one alien seeking "admission" and another seeking "readmission"—both are seeking the same thing: admission. The "or otherwise" clause maps

---

[1] Plaintiff also argues that in §1225(b)(2)(A), "'seeking admission' serves to modify 'applicants for admission'" and argues that the government "[t]reat[s] that modifier as doing no work." Answering Br. 44. He cites no authority to support this "modifier" reading, which suggests that the phrase "seeking admission" carries a different meaning in §1225(b)(2)(A) than in §1225(a)(3).

on perfectly: all applicants for admission are "seeking admission," whether for the first time or again—for example, an alien with a nonimmigrant visa authorizing multiple entries may be "seeking ... readmission to ... the United States" as an "applicant for admission." 8 U.S.C. §1225(a)(3). Moreover, being an applicant for admission may not be the only way for an alien to seek *re*admission, just like it is not necessarily the only way to "seek admission." Opening Br. 26; *Montoya*, 2025 WL 3733302, at *9 ("§1225(a)(3) leaves open the possibility that some aliens who are not applicants for admission may nonetheless be 'seeking admission'").

The statute's reference to "transit" does not undermine the government's reading. Plaintiff's critique assumes that the phrase "or otherwise" carries forward to modify "transit through"—so that the clause reads "... or [otherwise seeking] transit through the United States." But that does not fit the sentence structure of §1225(a)(3). Everyone agrees that "seeking" is the implied term between "or" and "transit"–"or [seeking] transit"—but it makes no sense to also carry forward "or otherwise" with "seeking" because §1225(a)(3) already contains an "or" before "transit." And it makes no sense to carry forward *only* "otherwise"–"or [otherwise seeking] transit"—because the relevant pair is "or otherwise," not "otherwise seeking" and not just "otherwise." *See Villarreal*, 839 F.3d at 963 ("This use of 'or

8

otherwise' to connect verbs is a familiar construction"); *Kleber*, 914 F.3d at 483 ("'or otherwise' language 'operates as a catchall'"); *accord* Antonin Scalia & Bryan Garner, *Reading Law:  The Interpretation of Legal Texts* 152-53 (2012).  Bottom line:  "or otherwise" does not modify "transit."

Even if it did, that would not be a license to wholesale rewrite otherwise clear text: "To object that §1225(a)(3)'s syllogism is invalid is an objection to be heard by Congress, not the Court."  *Montoya*, 2025 WL 3733302, at *8 n.7; And even if part of a statute may be "awkward" in some respect, that does not "make it ambiguous on the point at issue."  *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *see TDX Energy, LLC v. Chesapeake Operating, Inc.*, 857 F.3d 253, 262 (5th Cir. 2017) (applying *Lamie* to adopt reading with "imperfect grammar" over one that gives a term "its opposite meaning"); *accord Torres v. Lynch*, 578 U.S. 452, 472-73 (2016) (courts must discern "the right and fair reading of the statute before [them]" even though "Congress could have expressed itself more clearly").

Ultimately, Plaintiff asks the Court to rewrite § 1225(a)(3) on the theory that the provision should be read in the context of the statute's direction to inspect aliens at some specific point in time.  But the statutory text does not impose a temporal or geographic limitation, even though Congress plainly knows how.  Opening Br. 25–26 (temporal limit for

expedited removal).  *Torres v. Barr*, 976 F.3d 918, 924 (9th Cir. 2020) (en banc) is not to the contrary.  *See* Answering Br. 40.  That decision expressly based its reading on the language and context of §1182(a)(7)—specifically, the phrase "at the time of" modifying the phrase "application for admission" and use of that language "solely in connection with documents required to lawfully cross the United States border."  *Torres*, 976 F.3d at 924-25.  If anything, §1182(a)(7) *undermines* Plaintiff's position, because it shows that Congress knows how to limit provisions of the INA "to the moment of applying for entry at the border," *Torres*, 976 F.3d at 925, and yet §1225(b)(2)(A) lacks any comparable language.

3.    At a minimum, §1225(a)(3) is treating what comes after the "otherwise" clause as "simply another way of referring to aliens who are applicants for admission."  *Rojas v. Olson*, 2025 WL 3033967, at *8 (E.D. Wisc. Oct. 30, 2025); *see also Mejia Olalde*, 2025 WL 3131942, at *3.  Even if that produces some redundancy in §1225(a)(3) and (b)(2)(A), the canon against surplusage "is not a silver bullet," *Remini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019), because Congress often "employ[s] a belt-and-suspenders approach," *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020)—here, to ensure the broadest possible application of the inspection

requirement. And some redundancy is far superior to Plaintiff's reading, which nullifies the entire purpose of having an inspection requirement.

4. "Seeking admission" thus includes aliens who are "deemed constructive applicants for admission by operation of law [8 U.S.C. §1225(a)(1)]." *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 7433 n.6 (BIA 2012); *see* Opening Br. 24. Moreover, "seeking admission" must be read in context: "applicant for admission" is a term of art. *Torres*, 976 F.3d at 927. And "seeking admission" must be read in harmony with that specialized definition—particularly as both share the defined term "admission." *Accord Dubin v. United States*, 599 U.S. 110, 124 (2023) ("a word is known by the company it keeps"). Just as an alien is an "applicant for admission" even though no literal "application" is filed, so too an alien may be "seeking admission" even though the alien is not taking particular action "to obtain authorized entry."

Plaintiff's contrary argument—that "seeking admission" must be understood *only* as "seeking to obtain authorized entry," Answering Br. 40— is absurd on its own terms. "Admission" is a defined term, *see* 8 U.S.C. §1101(a)(13)(A), which means it cannot be given a colloquial definition. *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000). So really, Plaintiff is advocating that only one-half of the statutory phrase ("seek") be given a

colloquial meaning, and that its meaning be determined without reference to the technical term comprising the other half of the phrase ("admission") or the term of art ("applicant for admission") to which it relates. But the meaning of statutory language "cannot be determined in isolation," but must be derived "by reference to … the specific context in which that language is used." *Yates*, 574 U.S. at 537. Even if one could supplant defined terms with colloquial usage, Plaintiff's argument would necessarily fail: In everyday parlance, Plaintiff would undeniably be "seeking admission" by contesting removal and declining to voluntarily depart. *Infra*, p. 15.

5. Plaintiff argues that the Court should reject the statute as written because it would render the phrase "seeking admission" in §1225(b)(2)(A) superfluous. Answering Br. 42. Not so. As the government explained, when §1225(b)(2)(A) is read consistent with its structure, every phrase has independent meaning, including "seeking admission." Opening Br. 28. Not only that, Plaintiff's reading renders an entire clause surplusage:

> Subject to subparagraphs (B) and (C), ~~in the case of an alien who is an applicant for admission~~, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

And even if there were redundancy under the government' reading, that canon cannot be used to "rewrite or eviscerate another portion of the statute

12

contrary to its text," *Barton v. Barr*, 590 U.S. 222, 239 (2020); *see* Opening Br. 34-35.

### B. Plaintiff's interpretation of "seeking admission" distorts the statutory scheme.

Plaintiff's interpretation of "seeking admission"—that it is "present-tense active language" that "requires" that "the person must also be '*doing* something' ... to obtain authorized entry"—would also distort the statutory scheme.  Answering Br. 40.  Plaintiff is ambiguous about whether he reads "seeking admission" only to encompass aliens presenting at a port of entry or whether it also includes aliens entering *between* ports of entry—but either interpretation contravenes the statute.

To begin, Plaintiff's reading of "seeking admission" is incompatible with §1225(b)(2)(C), which reads:

> **In the case of an alien described in subparagraph (A)** who is arriving on land (**whether or not at a designated port of arrival**) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title.

8 U.S.C. §1225(b)(2)(C) (emphasis added).  That language unambiguously conveys that an alien "described in subparagraph (A)" includes aliens who "arriv[e]" in the United States "*not* at a designated port of arrival." *Id.* (emphasis added). So it cannot be that "seeking admission" in §1225(b)(2)(A) limits that subparagraph to aliens arriving at ports of entry.

And if Plaintiff's conception of "seeking admission" includes aliens arriving *between* ports of entry, then that would create the perverse result under §1225(b)(2)(C) that the only aliens arriving on land from a foreign "contiguous" territory who could not be returned to that territory during removal proceedings are those who are *not* "'*doing* something' … to obtain authorized entry," Answering Br. 40, but instead *intentionally evade inspection*. Congress could not have intended such a perverse regime.[2]

Moreover, reading "seeking admission" under Plaintiff's view to include aliens crossing *between* ports of entry just "introduce[s] more questions to the statute than answers." *Lopez v. Dir. of Enforcement & Removal Operations*, --- F. Supp. 3d ---, 2026 WL 261938, at *8 (M.D. Fla. Jan. 26, 2026) (quoting *Chen v. Almodovar*, 2026 WL 100761, at *9 (S.D.N.Y. Jan. 14, 2026)). For example: "[W]here does the statute's application end? One mile from the border? Twenty-five? And how quickly must the alien be apprehended before the statute no longer applies?" *Id.* (quoting *Altamirano Romas v. Lyons*, 2025 WL 3199872, at *7 (C.D. Cal. Dec. 19, 2025)). And how is one to know whether an alien crossing between ports of entry is "go[ing] in search of" or "try[ing] to acquire or gain"

---

[2] This discussion dispenses with Plaintiff's argument that §1225(b)(2)(C) supports his interpretation.

admission? The statute does not even begin to answer these questions—a clear sign this is not what it means. That is particularly true because Congress knows how to write geographic, temporal, or other limitations into law, as illustrated by the expedited removal provision (§1225(b)(1)). Opening Br. 25-26.

### C. At a minimum, Plaintiff is "seeking admission" under his own interpretation.

Finally, even if Plaintiff's reading were correct (and it is not), he is still "seeking admission." Opening Br. 30. Plaintiff objects that contesting removal is not "necessarily 'seeking admission.'" Answering Br. 45. That does not matter. Section 1229a provides that any applicant for admission who is referred to removal proceedings under §1229a, including Plaintiff, has the "burden of establishing ... that [he] is clearly and beyond a doubt entitled to be admitted and is not inadmissible under section 1182 of this title." 8 U.S.C. §1229a(c)(2)(A). By operation of statute, an alien referred to §1229a removal proceedings is seeking "lawful entry," Answering Br. 41—at least unless the alien attempts to voluntarily depart, Opening Br. 30. Indeed, the entire purpose of a §1229(a) removal proceeding is to "decid[e] the inadmissibility or deportability of an alien." 8 U.S.C. §1229a(a)(1).

15

## II. Section 1226 does not justify ignoring the unambiguous language of § 1225.

Despite its plain text, Plaintiff says that §1225(b)(2)(A) must be "confined to individuals apprehended upon inspection at the border" because detention of aliens "'inside the United States'" is governed by the separate authority in §1226, which authorizes DHS to "arrest[] and detain[]" an alien "pending a decision on whether the alien is to be removed from the United States," 8 U.S.C. §1226(a), and which requires mandatory detention of certain aliens, §1226(c). Answering Br. 25–32, 37. At bottom, Plaintiff's misguided reading of these provisions rests on his insistence that they be interpreted in isolation from §1225, but "[i]t is this Court's duty to interpret Congress's statutes as a harmonious whole rather than at war with one another." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018).[3]

### A. Section 1226(a) does not displace § 1225(b)'s clear text.

Plaintiff does not appear to dispute that §1226(a) is not rendered redundant by the government's interpretation of §1225(b)(2)(A) because it applies to aliens who *have* been admitted to the United States, who are not

---

[3] As the government has explained, *Jennings v. Rodriguez*, 583 U.S. 281 (2018), did not address the issue in this appeal—either directly or by implication. Opening Br. 39-40. Plaintiff does not seriously contest this issue but still tries to use *Jennings* to his advantage based on a sentence in the Solicitor General's briefing. Answering Br. 42. Even to the extent that sentence supports Plaintiff's argument, as explained, that the government previously took a different view of the statute does not vary its plain terms.

"applicants for admission" under §1225(b)(2)(A). Opening Br. 31. Yet Plaintiff insists that §1226(a) must be the governing detention statute for *inadmissible* aliens, too, because "Congress did not limit this provision to those who are 'deportable.'" Answering Br. 26. That is wrong.

1. To start, "[i]t is a commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel*, 566 U.S. at 645; *see* Opening Br. 32. Indeed, Congress often writes broad directives that are narrowed by more specific provisions, either within the same statutory section or across multiple sections in the same enactment. IIRIRA fits squarely within that tradition: To the extent that §1226(a)'s terms may cover aliens who are "applicants for admission" subject to §1225(b)(2)(A), when read in isolation, the latter is plainly the more specific provision and so it "governs." *RadLAX Gateway Hotel*, 566 U.S. at 645.

Regardless, even under the government's interpretation of §1225(b)(2)(A), there are aliens for whom inadmissibility is a reason for their removability and are subject to §1226(a) but who are not "applicants for admission" covered by §1225(b)(2)(A). For example, aliens who are improperly or erroneously admitted because they were "inadmissible" at the time of entry are subject to removal. *See* 8 U.S.C. §1227(a)(1)(A) ("[a]ny alien who at the time of entry or adjustment of status was within one or more of

17

the classes of aliens inadmissible by the law existing at such time is deportable"). Although inadmissible, those aliens were still admitted and so §1226(a), not §1225(b)(2)(A), controls.

Nonetheless, Plaintiff says §1226(a) must be read to apply to *all* inadmissible aliens because the predecessor to §1226(a) required detention "[p]ending a determination of *deportability*," 8 U.S.C. §1252 (1995) (emphasis added)—a ground that applied to aliens present in the United States, Opening Br. 6—while the new §1226(a) authorizes detention "pending a decision on whether the alien is to be *removed*," *id.* §1226(a) (emphasis added). Answering Brief 26. That misunderstands Congress's word choice. Recall that IIRIRA eliminated the prior "deportation" and "exclusion" proceedings and replaced them with the unified "removal" proceeding. Opening Br. 7-8; Answering Br. 6 n.1. Congress's shift in word-choice from "deportability" in predecessor §1252 to "removed" in §1226(a) was simply an effort to conform the language of new §1226(a) to the post-IIRIRA lexicon.

2. Shifting to legislative history, Plaintiff seizes upon a single sentence from a committee report, stating that the provision now codified at §1226(a) "restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an

18

alien who is not lawfully in the United States." House Rep. 104-469, part 1, at 229 (1996); House Rep. 104-828, at 210 (1996) (same); *see* Answering Br. 48. Of course, "legislative history [may] never … be used to 'muddy' the meaning of 'clear statutory language.'" *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019).

Legislative history is especially weak where there are competing or conflicting sources. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). Here, the same committee report states that Congress was replacing the concept of "entry" with "admission" to dispense with the old regime under which "illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings"—including a bond hearing—"that are not available to aliens who present themselves for inspection at a port of entry." House Rep. 104-469 part 1, at 225; *see* Opening Br. 6. That purpose is incompatible with Plaintiff's expansive interpretation of § 1226 as simply "restat[ing]" the prior regime. Opening Br. 37–39. At a minimum, the legislative history is "murky" and "ambiguous." *Allapattah Servs., Inc.*, 545 U.S. at 568.

3.     The same essential problem faces Plaintiff's reliance on post-enactment regulations and Executive practice. Answering Br. 53–55. Plaintiff points to a 1997 interim rule stating that aliens "who are present

without having been admitted or paroled ... will be eligible for bond." 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997). But Executive interpretation of a statute may inform the interpretive endeavor only when it is "issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 370 (2024). And here, the Executive promulgated regulations in 1997 providing for mandatory detention consistent with the government' interpretation:

> An alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2–year period immediately prior to the date of determination of inadmissibility *shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act.*

8 C.F.R. §235.3(b)(1)(ii) (emphasis added); *see* Opening Br. 27. Regardless, the terms of the statute, not agency pronouncements, control. *Loper Bright Enters.*, 603 U.S. at 412-13.

Plaintiff's reliance on Executive inaction falls short. Answering Brief 55. It is axiomatic that "authority granted by Congress cannot evaporate through lack of administrative exercise." *Bankamerica Corp. v. United States*, 462 U.S. 122, 131 (1983). That is especially true where, as here, the Executive has not wholly "fail[ed] ... to exercise the power it now claims." *Id.* Under prior administrations, the aliens now understood to be subject to

§1225(b)(2)(A) were still detainable—just under §1226(a). And every prior administration interpreted and applied §1225(b)(2)(A) to mandate detention of *some* aliens—just a subset of those actually subject to §1225(b)(2)(A). In any event, the Supreme Court has not hesitated to set aside longstanding agency interpretations and practices, including in the context of IIRIRA itself, when the Executive practice was inconsistent with the statute. *See Pereira v. Sessions*, 585 U.S. 198, 204-05 (2018).

### B. Section 1226(c) does not support Plaintiff's reading.

Plaintiff fares no better relying on §1226(c), which provides that the Executive "shall take into custody" certain aliens who are deportable or inadmissible for having committed certain specified offenses or engaged in terrorism-related actions. Answering Br. 27–32. According to Plaintiff, by "excepting certain inadmissible persons from §1226(a), subsection (c) shows that those inadmissible persons are otherwise encompassed by subsection (a)." Answering Br. 27.

1. This argument rests on the false premise that because § 1226(c) excludes certain aliens subject to § 1226(a)'s discretionary detention that §1226(c) applies *only* to aliens also subject to §1226(a). But a statute's reach may be constrained by another statute that also addresses other issues. Plaintiff wrongly assumes that Congress subjected the aliens identified in

§1226(c) to mandatory detention on the belief they were otherwise covered by §1226(a)—rather than based on Congress's independent desire to ensure that such criminal aliens would be detained.  *See Demore v. Kim*, 538 U.S. 510, 517-20 (2003) (recounting congressional focus on detaining criminal aliens).

Plaintiff relies on *Nielsen v. Preap*, 586 U.S. 392 (2019), to argue that §1226(a) applies to inadmissible aliens because §1226(c) "is simply a limit on the authority conferred by subsection (a)."  Answering Br. 36 (quoting *Nielsen*, 586 U.S. at 409). But *Nielsen* addressed the very specific question of whether the language in §1226(c)(1) referring to "when the alien is released" means that §1226(c)'s mandatory detention applies only when the alien is taken into custody *immediately* upon release. 586 U.S. at 396; *see id.* at 420-22 (Kavanaugh, J., concurring).  In answering that narrow question, the Court discussed the relationship between §1226(a) and (c), *see id.* at 408-10, but it did *not* address the interaction between §1225 and §1226.  *See, e.g.*, *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (issues "neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents").  It did not need to, as the aliens there were *admitted* as lawful permanent residents. *See Preap v. Johnson*, 303 F.R.D. 566, 572-73 (N.D. Cal. 2014); *Khoury v.*

22

*Asher*, 3 F. Supp. 3d 877, 880 (W.D. Wash. 2014).[4]  Indeed, the Supreme Court framed the issue in terms of "deportable" aliens. *Nielsen*, 586 U.S. at 395, 396.

Reading §1226 together with §1225, as *Nielsen* had no occasion to do, disproves Plaintiff's theory that §1226(a) necessarily covers *every* inadmissible alien referenced in §1226(c). For example, the grounds of inadmissibility listed in § 1226(c)(1)(A) and (D) would apply to aliens arriving at a port of entry—aliens Plaintiff agrees are subject to §1225(b)(2)(A).  The ground listed in §1226(c)(1)(A) renders inadmissible any alien who has committed "a violation of … any law or regulation of a State, the United States, or a foreign country related to a controlled substance," 8 U.S.C. §1182(a)(2)(A), and the ground listed in §1226(c)(1)(D) renders inadmissible an alien for terrorism-related activities or associations, *id.* §1182(a)(3)(B).  An alien who presents at a port of entry and is inadmissible on one of these grounds falls squarely within the terms of §1226(c).  But if §1226(c) did not exist, those aliens would not be subject to §1226(a); even under Plaintiff's reading, they would be covered by §1225(b)(2)(A).

---

[4] One of the named plaintiffs in *Khoury* was not a lawful permanent resident, but was subsequently determined not to be subject to §1226(c) and released.  *Khoury*, 3 F. Supp. 3d at 891 n.3.

23

The same is true of the grounds of inadmissibility added by the Laken Riley Act *after Nielsen* was decided: §1182(a)(6)(C) and (a)(7). *See* 8 U.S.C. §1226(c)(1)(E)(i)-(ii). Under Plaintiff's reading, aliens who are inadmissible on those grounds (but did not commit the qualifying offenses in §1226(c) are necessarily subject to §1226(a)'s discretionary detention. That is refuted by the expedited-removal provision, which applies to (1) aliens arriving in the United States and (2) "certain other aliens" who "ha[ve] not been admitted or paroled into the United States" and have been present in the United States for less than two years—but only if they are "inadmissible under section 1182(a)(6)(C) or 1182(a)(7)." 8 U.S.C. §1225(b)(1)(A)(i), (iii). And both parties agree that §1225(b)(1) mandates detention. Answering Br. 8–9. The upshot: aliens who, on Plaintiff's theory, should be covered by §1226(a) are subject to detention under §1225(b)(1).

The preceding point refutes Plaintiff's argument that the Laken Riley Act—which added subparagraph (E) to §1226(c)(1)—"demonstrates that, by default, § 1226(a) 'appl[ies] generally' to" certain persons "charged under §1182(a)(6)(A) or (a)(7)" "unless they meet the conditions of the exception." Answering Br. 28 (quoting *Shady Grove Orthopedic Assoc., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). Plaintiff's reliance on the Laken Riley Act is further undermined by the fact that it also amended §1225(b) to

provide a cause of action for States in the event the federal government "violat[es] the detention and removal requirements under paragraph (1) or (2)." Pub. L. No. 119-1, §3, 139 Stat. 3, 4 (Jan. 29, 2025) (codified at 8 U.S.C. §1225(b)(3)). If §1225(b)(2)(A) really were limited to aliens voluntarily presenting at a port of entry for inspection, there would have been little reason to worry that the Executive would not enforce the "detention … requirements" in that provision.[5] 8 U.S.C. §1225(b)(3).

2. Otherwise, Plaintiff's remaining arguments regarding §1226(c) boil down to an objection that the government's reading renders portions of it redundant and/or fails to explain why Congress wrote the law as it did. Answering Br. 29–37. But legislation often does not fit into neatly compartmentalized boxes, and Congress often takes a belt-and-suspenders approach to be "doubly sure." *Barton*, 590 U.S. at 239. Section 1226(c) is no different. Besides, as the government explained, Section 1226(c) applies to a number of aliens not subject to §1225(b)(2)(A). Opening Br. 32–33, 36. Plaintiff objects that aliens "who were erroneously admitted are not

---

[5] Plaintiff argues that the government does "not explain why the 'carve[] out' provision of §1226(c) would apply to detention authority under a completely separate section. Answering Br. 36. But as Plaintiff acknowledges, Congress is presumed to legislate against the backdrop of existing law, and at the time of the Laken Riley Act's passage, the Executive was operating under the prior, incorrect interpretation of §1225(b)(2)(A).

inadmissible; they are deportable." Answering Br. 33. But the portions of §1226(c) that apply to inadmissible aliens, *see* 8 U.S.C. §1226(c)(1)(A), (D), "still operate when an alien is found erroneously admissible," *Montoya*, 2025 WL 3733302, at *11. Plaintiff's argument that the present tense "is" before "inadmissible" in these provisions means that those provisions do not apply to aliens who were erroneously admitted, Answering Br. 33-34 & n.6, is not supported by any authority, and *Montoya* shows that it is incorrect.[6]

In the end, Plaintiff's reliance on partial redundancy between §1225(b)(2)(A) and §1226(c) ignores the Supreme Court's recognition that "[r]edundancies are common in statutory drafting" and are "not a license to rewrite or eviscerate another portion of the statute contrary to its text," *Barton*, 590 U.S. at 239. And that is particularly true of the Laken Riley Act, which was enacted nearly three decades after §1225(b)(2) and §1226(c) became law. *See* Opening Br. 34–36; *see also Montoya*, 2025 WL 3733302, at *12 ("the Supreme Court 'ha[s] often observed the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one" (quoting *South Dakota v. Yankton Sioux Tribe*, 552 U.S. 329, 355 (1998)).

---

[6] Plaintiff also argues that stowaways' non-coverage by §1225(b)(2)(A) "provides Defendants no support" because they are covered by a "different detention and removal scheme." Answering Br. 35 n.7. But Plaintiff does not dispute that stowaways can fall within the class of aliens to which §1226(c) might apply. *See* Opening Br. 33.

The canon is weaker still when there is overlap under either possible interpretation. Opening Br. 35. Plaintiff disputes that the Laken Riley Act overlaps with § 1225(b)(2)(A) under his reading because aliens "who arrive in the country at a port of entry" are "subject to mandatory detention under §1225(b)(2)." Answering Br. 36. That misses the point. *By its terms*, the Laken Riley Act applies to aliens who arrive at a port of entry and are inadmissible on certain grounds, *see* 8 U.S.C. §1226(c)(1)(E), and those same aliens also are covered by §1225(b)(2)(A) *under Plaintiff's reading*. The fact that §1225(b)(2)(A) governs such aliens does not mean the language of the Laken Riley Act does not also apply.

Finally, to the extent there is overlap, §1226(c) and the Laken Riley Act serve the independent function of limiting release from detention on parole of aliens who are removable under the specified provisions and who meet the offense criteria. 8 U.S.C. §1226(c)(1)(E); Opening Br. 36. Disputes about the placement and reach of this provision reduce to a dispute about how Congress chose to achieve its objective. But "there are many ways to skin a cat," *Wagner v. FEC*, 717 F.3d 1007, 1012 (D.C. Cir. 2013), and Congress's decision to include a restriction on a release authority in a statute that mandates detention is one way of accomplishing its objectives.

27

### III. Plaintiff's interpretation subverts express Congressional intent.

Plaintiff's reading directly subverts one of Congress's express objectives in enacting IIRIRA—to eliminate the preferential treatment of aliens who had entered the country unlawfully vis-à-vis those who presented themselves at a port-of-entry for inspection. Opening Br. 6, 37–39. After all, the vast majority of aliens who have "arrive[d] in the United States" outside a port of entry or are already "present in the United States" without admission are not "'*doing* something' … to obtain authorized entry," Answering Br. 40; they *intentionally evaded* inspection and entered the United States contrary to law. 8 U.S.C. §1325(a). So, under Plaintiff's reading of §1225, the millions of aliens who have deliberately violated U.S. law are entitled to receive a bond hearing, while aliens who willingly present themselves at a port of entry "seeking lawful entry" (Answering Br. 40) in accordance with law are subject to mandatory detention. This Court should reject such a perverse regime that so clearly abrogates Congress's objective.

Plaintiff does not dispute this is the consequence of his argument, nor that in enacting IIRIRA Congress meant to eliminate the existing system that afforded "greater procedural and substantive rights … in deportation proceedings" to aliens who successfully entered the country illegally. Opening Br. 6 (quoting *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 223

(BIA 2025)). Nonetheless, Plaintiff tries to separate preferential treatment in "removal proceedings" from preferential treatment in detention, Answering Br. 52-53—but the detention authorized is pending removal proceedings; the two are intertwined. *See* 8 U.S.C. §1225(b)(2)(A). Plaintiff offers no theory why a Congress determined to eliminate favoritism toward lawbreakers would have preserved that favoritism for something so significant as detention.

## IV. Constitutional avoidance does not apply here.

As a last resort, Plaintiff turns to the canon of constitutional avoidance. Answering Br. 55-57. That canon "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Jennings*, 583 U.S. at 296. The key to the constitutional avoidance canon is that a court may "impose a limiting construction on a statute only if it is 'readily susceptible' to such a construction." *United States v. Stevens*, 559 U.S. 460, 481 (2010). A court may "not rewrite a law to conform it to constitutional requirements," as "doing so would constitute a serious invasion of the legislative domain, and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." *Id.* (citations omitted). The canon has no relevance here. As the government has explained, §1225(b)(2)(A) unambiguously requires

29

detention of aliens like Plaintiff and it is not "readily susceptible" to a different reading. *See Stevens*, 559 U.S. at 481.

Further, §1225(b)(2)(A) does not offend due process and so there is no constitutional concern to avoid. As an initial matter, the Court should not address this issue (which the district court did not rule on) for the first time on appeal. But regardless, Plaintiff's due-process theory is meritless. He suggests that he must be given "adequate procedural protections" before detention. Answering Br. 56 (citation omitted). But *Zadvydas v. Davis*, 533 U.S. 678 (2001)—one of the cases on which Plaintiff relies—addressed only whether *indefinite* detention under a different provision of the INA comports with due process, *id.* at 682, 690, 692. Plaintiff is not challenging the *duration* of his detention. And unlike the aliens challenging their detention in *Zadvydas*, Plaintiff does not argue that his removal is not "practically attainable." *Id.* at 690. Indeed, in *Demore*, 538 U.S. at 527-29, the Supreme Court distinguished *Zadvydas* in upholding the mandatory detention scheme in §1226(c) on those precise grounds.

Although Plaintiff argues that the Due Process Clause "protects persons who have entered the country," Answering Br. 56, one of his own cases states that an alien's physical presence 'pending determination of his admissibility' does not 'legally constitute an entry.'" *Leng May Ma v. Barber*,

30

357 U.S. 185, 187 (1958). Instead, additional rights accrue "*once an alien gains admission* to our country and begins to develop the ties that go with permanent residence." *Landon v. Plascencia*, 459 U.S. 21, 32 (1982) (emphasis added); *see also Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020) (stating that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border"). Plaintiff cites no case or principle that can override this clear precedent.[7]

---

[7] Although Plaintiff argues the government failed to preserve its argument that class-wide declaratory relief cannot be squared with habeas, Answering Br. 57 n.15, he does not rebut the government's cases. Opening Br. 19-20 & n.6. Those cases make clear that the relief available in habeas is an order of release, not a declaration. *Nielsen* is not to the contrary, *see* Answering Br. 57 n.15; there, the Court did not address the appropriateness of purportedly class-wide declaratory relief in a habeas case. As to preservation, the government argued (and the district court addressed the argument) that class-wide declaratory relief was inappropriate under §1252(f)(1) and Rule 23(b)(2). ER-26-31; *see Shen v. Garland*, 109 F.4th 1144, 1158 (9th Cir. 2024) (stating that if issues are preserved, "appellants 'are not limited to the precise arguments they made below.'" (citation omitted)). Even if the argument were forfeited, reviewing courts "may consider issues not presented to the district court ... when," as here, "the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (citation omitted). Finally, Plaintiff does not dispute that the government's §1252(f)(1) and Rule 23(b)(2) arguments are preserved. *See* Opening Br. 19-20 & n.6.

## CONCLUSION

The Court should reverse the district court's order granting partial summary judgment for Plaintiff.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
  *Civil Division*

YAAKOV M. ROTH
  *Principal Deputy Assistant*
    *Attorney General*

DREW C. ENSIGN
  *Deputy Assistant Attorney*
    *General*

BENJAMIN HAYES
  *Senior Counsel to the Assistant*
    *Attorney General*

ELIZABETH HEDGES
  *Counsel to the Assistant*
    *Attorney General*

VICTOR MERCADO M. SANTANA
Senior Litigation Counsel

IAN S. LAM
Trial Attorney

 *s/ Michael D. Ross*
MICHAEL D. ROSS
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
TEL: (202) 506-0754

*Counsel for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on February 3, 2026.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

*s/ Michael D. Ross*
MICHAEL D. ROSS

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,970 words, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in proportionally-spaced 14-point Georgia type.

*s/ Michael D. Ross*
MICHAEL D. ROSS

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 25-6842

I am the attorney or self-represented party.

**This brief contains** 6,970 **words,** including [              ] words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [              ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Michael D. Ross **Date** February 3, 2026

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*